Fred J. Munder, J.
In this article 78 proceeding the petitioner seeks to review and annul the determination of the Zoning Board of Appeals of the Town of Huntington which denied an application for a special exception permit to erect an overhead electric transmission line on a right of way owned by the petitioner or over which it has appropriate easements. The transmission line is to run from a new generating station to be constructed on a 250-acre site on Long Island Sound just east of the Villages of Northport and Asharoken Beach in the Town of Huntington to the petitioner’s Pilgrim substation adjacent to the Sunken Meadow State Parkway just south of Commaek in the Town of Smithtown, a total distance of about seven or eight miles.
On the argument before the court it was revealed that for about a half-mile from the generating station the transmission line is to be installed underground in compliance with a condition imposed by the Town Board on its grant of the permit to erect the generating station at the site above mentioned. For that reason and for the reason that the right of way condemnation proceedings had not been concluded with respect to land north of New York State Route 25A, the present application relates to the right of way beginning on the south side of Route 25A and running south and east for a distance of three and one-tenth miles to the town line of the Town of Smithtown.
The petitioner states that this right of way runs first through a sparsely settled residential area, then for six tenths, of a miV *719 through land of the United States Government on which the Veterans’ Administration Hospital is located, thence through a relatively undeveloped residential area and a former sand pit to the westerly boundary line of the town garbage dump which it follows for a distance of three tenths of a mile and thence runs easterly to the town line. The respondent, on the other hand, says that the route of the right of way runs through some of the finest high ground wooded residential areas in the town which are zoned for residential use on two-acre (Residence A) and one-acre (Residence B) plots, and where the character has been established for custom built residential development. To thrust this, the largest transmission line in petitioner’s system, through such an area, denuding the right of way of trees over its width, varying from 200 to 250 feet, and erecting thereon steel towers varying in height from 90 feet to 120 feet, three or four abreast with three arms to each tower, carrying high tension lines, the respondent found, would adversely affect the character of the neighborhood and depreciate the values of the surrounding properties.
The petition to the Board of Appeals was for a special use permit pursuant to section 2-B of article IX of the Building Zone Ordinance “ to construct, operate and maintain an electric transmission line consisting of steel towers, wires, counterpoises, conduits, pipes, cables and other appurtenant overhead and underground facilities ” on its right of way and for a variance of section 1 of article XII of said ordinance to permit the construction of steel towers in excess of 85 feet.
Section 2-B of article IX, so far as is here pertinent, reads:
“ Section 2. The Board of Appeals may in a specific case after the refusal of the Building Inspector to issue a building permit after a public notice and hearing, and subject to appropriate conditions and safeguards, determine and vary the application of the regulations herein established in harmony with their general purpose and intent as follows: * # *
“ B. Grant a permit for any public utility in any district.”
The ordinance provides general standards which are applicable to special exception permits. These are found in section 6 of article IX and read:
“ Section 6. Standards. The Board of Appeals shall not grant a permit for any special exception unless it shall first determine that:
“A. It is reasonably necessary for the public health or general welfare and interest.
*720 “ B. It is appropriately located with respect to transportation facilities, water supply, fire and police protection, waste disposal and similar facilities.
“ 0. Neighborhood character and surrounding property values are reasonably safeguarded.
‘ ‘ D. Úse will not cause undue traffic congestion or create a traffic hazard.”
After an exhaustive hearing, lasting more than five and one-half hours on two evenings, during which some 18 witnesses were heard and 34 exhibits were introduced by the petitioner and a number of letters, memoranda and objecting statements were presented by the opposition, the board adjourned the proceedings to receive recommended findings and written briefs from both sides. Then upon considering this voluminous mass of testimony and other evidence and data the board made its findings.
Among the findings the board concluded that the transmission line was reasonably necessary for the public health and general welfare and interest but that the proposed overhead transmission line would have an overpowering effect that would dominate the area and consequently would depreciate land values and adversely affect the character of the neighborhood. For this reason the board denied the application.
The petitioner now argues that the grounds invoked by the board to deny its application must be sustained by competent evidence in the record. As a general statement this is true. Whatever decision is made by an administrative board must find its reasonable basis in competent evidence, i.e.,“fit and appropriate proof in the particular case ”. (Richardson, Evidence [8th ed.], § 4.) Here I cannot say that this board on the fit and appropriate proof before it could not reasonably reach the conclusion it did. The statements of the objectants appearing in the record may not have reached the level of admissible evidence in a court. ‘ ‘ At all events, when there is evidence in the record, whatever inferences therefrom are proper will be presumed, in aid of the dispensing resolution, to have been drawn by the Board. The statements of the witnesses do not have to comply with the technical requirements applicable to testimony in court. They are not even under oath. It is enough that reasonable men could view them as entitled to probative effect.” (Cabdozo, C. J., in People ex rel. Fordham Manor Reformed Church v. Walsh, 244 N. Y. 280, 287.)
With these rules in mind I believe that the board could give probative effect to the general opinion of the objectants’ wit *721 ness, David Brener, a real estate expert without personal experience in sales near transmission lines, who said that “ the value of land in the immediate area will be affected adversely by transmission towers. I also think that it will affect land as a stone dropped into water. The ripples extend outward from the towers, and the land will be affected in about that order.” This statement the board may well have found to have support in the testimony of petitioner’s experts. One, George P. Tobler, shown one of the petitioner’s photographic exhibits depicting a transmission tower in the front yard of a residence was asked “ Do you think that would affect the saleability of that home? ” and he replied “ I would say probably ”. The other, William L. Edwards, testified ‘ ‘ My conclusion after consulting with a sales organization would be that there would be a number of people who do not care to live next to a transmission line, just as there may be a number of people who are not interested in living next to a school, or a church, a firehouse, industry, or business. However, I would conclude that a strong segment of the buying public is not affected by these elements ”.
The burden was upon the petitioner to satisfy the board that the proposed use would not adversely affect the neighborhood character and the surrounding property values. (Matter of Stell Realty Corp. v. Plonski, 11 A D 2d 695.) This obviously the petitioner failed to do.
The court may not substitute its judgment for that of the board. It may annul the determination only if there has been illegality, arbitrariness or abuse of discretion. (Matter of Lemir Realty Corp. v. Larkin, 11 N Y 2d 20.) In that case, Chief Judge Desmond said (p. 24): “ Board action refusing to grant a ‘ special exception ’ is by definition and in essential character discretionary and not a denial of a right * * * Otherwise, there would be no point in listing certain uses as the permitted ones in a use district and listing others as permissible only when specially, exceptionally and affirmatively authorized by the board.”
Petitioner, however, asserts that in respect to applications of public utilities the board has a narrower range of discretion than is generally the case. It cites Anderson’s Zoning Law and Practice in New York State, at page 312, for this principle and the rule that denials of special permit applications by utilities will be more closely scrutinized by the courts. But Professor Anderson also says, at page 313 of his book, that the special exception technique ‘ ‘ may be the device best suited to regulate the location of new public utility installations and to insure *722 that the construction of new units and the expansion of existing facilities is accomplished with a minimum of injury to the community plan. ’ ’ In any event it is clear that neither by legislation nor by administrative ruling may a municipality totally bar a public utility installation. (Matter of Long Is. Light. Co. v. Griffin, 272 App. Div. 551; Long Is. Light. Co. v. Village of Old Brookville, 72 N. Y. S. 2d 718, affd. without opn. 273 App Div. 856, affd. without opn. 298 N. Y. 569.) Whether the denial here was an effective prohibition of the maintenance of power lines will be later discussed.
We come now to the point advanced by the petitioner that a primary jurisdiction has been assumed by the Public Service Commission in relation to the construction of the overhead transmission line and that the respondent Zoning Board of Appeals was precluded from overriding its determination. What occurred here is this. The Long Island Lighting Company, planning to construct a transmission line through parts of the Towns of Smithtown and Huntington, first applied to the Town Board of the Town of Smithtown for a special permit pursuant to its zoning ordinance. When the Town Board of the Town of Smithtown, questioning the safety of the overhead installation of that part of the proposed transmission line that is to run in its town, denied that application, the Lighting Company suspended other efforts in either the Town of Smithtown or the Town of Huntington and proceeded before the Public Service Commission.
Its application before the commission sought answers to these two questions:
“ (1) whether the proposed 138-volt steel tower transmission line to be constructed by Lilco on private right-of-way in the Towns of Smithtown and Hutington may with due regard to safety and economy be maintained overhead; or whether the public interest requires placement of said transmission line underground; and
“ (2) whether Lilco under its rate schedule will be making or granting an undue or unreasonable preference or advantage to the Towns of Smithtown or Huntington, or persons residing therein in violation of subdivision 3 of Section 65 of the Public Service Law, 'in the event Lilco, at substantial additional expense, places the said transmission lines underground in said towns ”.
After conducting a hearing, at which both towns were represented by counsel, the commission rendered an opinion by Commissioner Frank J. McMullen, who reviewed the testimony *723 before it and after stating the scope of the hearing to be: “ By statutory mandate, every electric corporation is required to ‘ furnish and provide such service, instrumentalities and facilities as shall be safe and adequate and in all respects just and reasonable ’: (S. 65, P. S. L.). Our only inquiry here is to determine, under the general powers delegated to us by Section 66 of the Public Service Law, whether the proposed overhead transmission line will meet the legislative standards of safety, adequacy, justness and reasonableness; if not, to fix and prescribe proper, safe and adequate facilities. In view of our determination here, it is unnecessary for the Commission to malee a determination, at this time, whether any undue or unreasonable preference or advantage would accrue to the Towns of Smith-town and Huntington or persons residing therein, in violation of subdivision 3 of Section 65 of the Public Service Law were this line to be installed underground ’ ’ stated its conclusion as follows: “ Public utilities are required by law to render public service at the most reasonable costs. The cost of placing the proposed line underground in oil-pressured pipes would run approximately five times the cost of an overhead line. After giving due consideration to the testimony in this record, we can find no factors which would reasonably justify such an expenditure especially where, as here, the proposed overhead transmission line demonstratively would be equally as safe and reliable as an underground line. Aside from its aesthetic value, the proposed transmission line, if placed underground, would offer little or no safety or operating advantages. Consequently, it would appear that there is no basis for a determination that the 138,000-volt overhead transmission line, as proposed by Lilco on its right-of-way between its Northport generating station in the Town of Huntington to its Pilgrim Substation in the Town of Smithtown, will be unsafe, inadequate or improper.”
On the appeal from a later determination of the Town Board of the Town of Smithtown granting the application for a special permit, which came before me, I discussed this question. (Indian Head Assoc, v. Osgood, N. Y. L. J., March 20, 1964, p. 17, col. 7.) After observing that the Public Service Commission’s jurisdiction and power has been regarded as primary and controlling, particularly in rate and schedule cases, I said: “ Whatever may be its exact status there seems to be no doubt that the courts, while reserving a right of judicial review over its actions, will accord the Commission a strong enough power to conclusively control those private, corporate or municipal utilities under its *724 supervision; settle issues between those utilties and the general public, and prevent municipalities from nullifying a regulatory directive made within its competence by the commission.”
It is important in the instant case to observe just what was done by each administrative agency. What the Public Service Commission did was to answer the question propounded by the petitioner by saying that‘ ‘ There is no basis for a determination that the proposed overhead transmission line will be unsafe, inadequate or improper”. The precise question before the respondent Board of Appeals, however, was whether “ neighborhood character and surrounding property values are reasonably safeguarded ”. (Huntington Building Zone Ordinance, art. IX, § 6.) It did not question the safety or adequacy of the proposed line.
Consequently the doctrine of primary jurisdiction is here inapplicable. That doctrine “ is one of the self-denying doctrines of the judiciary concerned with the promotion of proper relationships between the courts and administrative agencies charged with particular regulatory duties. It is a mode of accommodating the complementary roles of courts and administrative agencies in the enforcement of law and is based upon practical considerations which dictate a division of functions or allocation of business between court and agency; the avoidance by the courts of embarrassing the administrative agency in the performance of its functions and the provision to the courts of the expert and informed judgment of the administrative agency as a guide to the judgment which the court should enter.” (2) Am. Jur. 2d 690, § 789; and, see, United States v. Radio Corp. of America, 358 U. S. 334, 346.)
Here the petitioner seeks to invoke the doctrine as between two administrative agencies. In such cases it is not a question of primary and exclusive jurisdiction but is a situation in which the doctrine of res judicata or collateral estoppel may apply. (Matter of Nash v. Brooks, 276 N. Y. 75.) However, an administrative determination is effective only for the purpose for which it was made (Matter of Gibbs v. Wallin, 282 App. Div. 578) and the doctrine of res judicata does not apply as to issues not within the jurisdiction of the administrative agency (2 Am. Jur. 2d 311, § 500; Matter of Weiss v. Franklin Sq. & Munson Fire Dist., 309 N. Y. 52), or where there is no identity of issues.
In our case what was determined by the Public Service Commission was that the proposed transmission line would not be unsafe, inadequate or improper. It made no determination on the effect of the proposed transmission line on the neighborhood *725 character or the surrounding property values. I conclude then that by neither the primary jurisdiction doctrine nor by the doctrine of res judicata was the respondent board precluded from making the determination it made.
Here the petitioner’s application was denied but it is obvious from the board’s determination that it was not thereby intended to bar any transmission line. That would have been beyond the power of the board. (Matter of Long Is. Light. Co. v. Incorporated Vil. of South Floral Park, 158 N. Y. S. 2d 878; Matter of Consolidated Edison Co. v. Village of Briarcliff Manor, 208 Misc. 295.) It was observed by Mr. Justice Eageb, in the latter case, that while a municipality may not bar a public service improvement it may, within reason, regulate the improvement consonant with its zoning plan. In some States public utilities are by statute exempted from local zoning regulations. However, in “ New York, public utilities remain subject to the zoning regulations of the communities in which they operate. They are protected from discriminatory treatment and unreasonable limitations, but the municipalities retain sufficient power to protect neighborhoods and to require such conformity to the community plan as will not hinder safe and adequate service (Anderson, Zoning Law and Practice in New York State, p. 318, § 9.24 and, see, Matter of Niagara Mohawk Power Corp. v. City of Fulton, 8 A D 2d 523.)
What was denied was the application to install the overhead transmission line as described therein. The board clearly indicated its approval of an underground installation. The board might conceivably have granted the application to install the transmission line on condition that it be placed underground. Its denial in these circumstances is without prejudice to a new application for the underground installation.
I have not concerned myself with the argument that the board’s decision is illegal because it purports to deal with that portion of the right of way that runs through the Northport Veterans’ Hospital grounds which are said to be owned by the United States. This question was not raised before the board. Furthermore there was no proof before the board or before the court as to ownership or the nature thereof or as to whether the State of New York has ceded exclusive jurisdiction to the United States over this land. (91 C. J. S., United States, § 7, subds. a, g.) The court will indulge in no presumption as to jurisdiction. In any event the question is more moot than real. If no State jurisdiction over this land exists the determination will be ineffective against the United States. If the petitioner desires, *726 in that case, to run its line through the hospital grounds it must get the Government’s consent and approval as to the nature of the installation.
For these reasons the determination of the board is sustained and the petition is dismissed.