# JOHN CICALA *v.* DISABILITY REVIEW BOARD FOR PRINCE GEORGE'S COUNTY ET AL.

[No. 141, September Term, 1979.]

*Decided August 15, 1980.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Joseph A. DePaul,* with whom were *William C. Brennan, Jr.,* and *DePaul, Willoner & Kenkel, P.A.* on the brief, for appellant.

*Steven J. Gillman, Associate County Attorney,* with whom was *Michael O. Connaughton, Deputy County Attorney,* on the brief, for appellees.

DAVIDSON, J., delivered the opinion of the Court.

This case involves an application of the Prince George's County Police Pension Plan (Plan) authorized by Prince George's County Code (1975), § 16-231.[1] The Plan is funded by contributions from both the County and each participating policeman. § 7.1 and § 7.2.[2]

---

**1.** § 16-231 (a) provides in pertinent part:

"The County Executive shall be authorized to establish, by agreement, police and fire pension plans. . . ."

**2.** § 7.1 of the Plan provides in pertinent part:

"Each Employee shall contribute to the Trust Fund, from and after January 1, 1973, eight percent of his Compensation. . . ."

§ 7.2 provides in pertinent part:
"The County shall contribute to the Trust Fund from time to time such amounts as are actuarially determined to be required to provide for the benefits under the Plan."

The Plan's purpose is to provide a variety of pension benefits to policemen. Among these benefits is a monthly payment to policemen who retire as a result of disability. Disability is defined in pertinent part in § 4.3 (a) of the Plan as:

> "(1) The Participant is so disabled, mentally or physically, that he is unable to fill any position then available to him as an Employee.
>
> "(2) His disability is likely to be of long duration."

If the disability is "service connected," a retired policeman is ordinarily entitled to a monthly benefit amount of one-twelfth of 70 percent of his average annual compensation. A service-connected disability is defined in pertinent part in § 4.3 (c) (1) as:

> "[A] disability . . . caused by an injury or sickness suffered as a *result of his performance of his duties* as an Employee. . . ." (Emphasis added.)

If the disability is not service connected, the monthly benefit amount is ordinarily one-twelfth of 50 percent of the average annual compensation. A "non-service connected disability" is defined in pertinent part in § 4.3 (c) (2) as:

> "[A] disability . . . *not* caused by an injury or sickness suffered *as a result of his performance of his duties* as an Employee. . . ." (Emphasis added.)

The Plan establishes a procedure for determining disability. Section 4.3 (b) provides in pertinent part:

> "All determinations of disability shall be made by *the Disability Review Board,* which shall be composed of not less than five members appointed by the Retirement Board. A disability determination shall be begun upon written application of a Participant, the Retirement Board, or the Administrator, filed with the Disability Review Board. *Before making its determination, the Disability Review Board shall hold a hearing,* if

requested by the Participant, the Administrator, or the Retirement Board, *and shall obtain a written opinion of the Medical Review Committee* which shall be composed of at least three physicians selected by the Retirement Board, *with regard to the nature, cause, degree of permanence, and effect of the alleged disability."* (Emphasis added.)

In addition, Rule III (3) of the Rules of Administrative Procedure of the Disability Review Board (Rule III (3)) provides in pertinent part:

"Within 7 days from the date of receipt of the decision of the Board, the applicant, the County, or any other party of record may file with the Board a *motion for rehearing but only on the grounds of error of law or newly discovered evidence* which the movant could not with due diligence have discovered prior to the Board's decision." (Emphasis added.)

On 6 February 1974, and again on 19 March 1976, the appellant, John Cicala, a Prince George's County policeman (policeman), suffered accidental injuries. On 31 May 1977, he applied to the Disability Review Board (Board) for service-connected disability retirement benefits. On 19 May 1978, the Board determined that the policeman was permanently disabled but that his disability was not service connected, and denied him the enhanced benefit amount provided for in § 4.3 (c) (1). In the absence of a statutory right of appeal, the policeman, on 9 June 1978, filed a petition for a writ of mandamus in the Circuit Court for Prince George's County seeking reversal of the Board's determination. The trial court denied his request for a jury trial, found that the Board had not acted arbitrarily, and affirmed. The policeman appealed to the Court of Special Appeals and we issued a writ of certiorari before consideration by that Court. We too shall affirm.

I

The policeman initially contends that he was denied the

right to a jury trial. He points out that Maryland Code (1957), Art. 60, Mandamus, § 7 provided in pertinent part:

"*An action for a writ of mandamus* shall be tried by a jury if either party desire it. . . ." [3] (Emphasis added.)

He maintains that this section established, in effect, the right to a trial in which the jury could decide both questions of fact and matters of law. We do not agree.

In Maryland, a party in a civil proceeding at law is entitled to a jury trial on questions of fact, but not on matters of law.[4] More specifically, this Court has recognized that in mandamus proceedings, a jury's function is limited to determining questions of fact. *See Williams v. McCardell,* 198 Md. 320, 330, 84 A.2d 52, 57 (1951) (dicta). Courts in other jurisdictions agree, holding that in mandamus proceedings, a party is not entitled to a jury trial if there is no dispute as to any material fact. *See, e.g., Williamson v. Kempf,* 574 S.W.2d 845, 847 (Tex. Civ. App. 1978); *State ex rel. Pillsbury v. Honeywell, Inc.,* 291 Minn. 322, 332-33, 191 N.W.2d 406, 413 (1971); *Marion County v. Coler,* 75 F. 352, 353 (5th Cir. 1896). *See also* 50 C.J.S. *Juries* § 52 (1947). A statute which would authorize a jury to determine a matter of law in a mandamus proceeding would constitute a radical departure from this established principle.

In the absence of a statutory provision for an appeal from a determination of an administrative agency, judicial review may be obtained through an action for a writ of mandamus.

---

**3.** This section was recodified without substantive change in ch. 142, Acts of 1978, effective 1 July 1978, as Md. Code (1974, 1980 Repl. Vol.), § 3-8A-02 of the Courts and Judicial Proceedings Article.

**4.** Md. Decl. of Rights, Art. 23, provides in pertinent part:

"'The right of trial by Jury of all *issues of fact* in civil proceedings in the several Courts of Law in this State . . . shall be inviolably preserved." (Emphasis added.)

In contrast, Art. 23 also provides in pertinent part:

"In the trial of all criminal cases, the Jury shall be the Judges of *Law, as well as of fact.* . . ." (Emphasis added.)

*Criminal Injuries Compensation Bd. v. Gould,* 273 Md. 486, 503, 331 A.2d 55, 66 (1975); *Hecht v. Crook,* 184 Md. 271, 280, 40 A.2d 673, 677 (1945). When an action for a writ of mandamus is brought to have a trial court review the decision of an administrative agency, the trial court's function is limited to a determination of whether the administrative agency has acted arbitrarily, capriciously, unreasonably, or illegally. *Gould,* 273 Md. at 501, 331 A.2d at 65; *Hecht,* 184 Md. at 280, 40 A.2d at 677. One of the ways in which an administrative agency acts arbitrarily is to reach a decision which is not based upon or supported by facts in the record. *Insurance Comm'r v. National Bureau of Casualty Underwriters,* 248 Md. 292, 300-01, 236 A.2d 282, 286-87 (1967); *Heaps v. Cobb,* 185 Md. 372, 378, 45 A.2d 73, 76 (1945). *See Steuart Inv. Co. v. Board of Comm'rs of St. Mary's County,* 38 Md. App. 381, 394, 381 A.2d 1174, 1182 (1978). In determining whether the agency has acted arbitrarily in this respect, a court is restricted to the record made before the administrative agency. *Aspen Hill Venture v. Montgomery County Council,* 265 Md. 303, 316-17, 289 A.2d 303, 310 (1972); *Port Wardens of Annapolis v. Maryland Capital Yacht Club,* 261 Md. 48, 60, 273 A.2d 102, 108 (1971), may not substitute its judgment for that of the agency, *Mayor of Annapolis v. Annapolis Waterfront Co.,* 284 Md. 383, 395, 396 A.2d 1080, 1087 (1979); *Marek v. Baltimore County Bd. of Appeals,* 218 Md. 351, 359, 146 A.2d 875, 879 (1958), and is confined to a determination whether, based upon the record, a reasoning mind reasonably could have reached the factual conclusion reached by the administrative agency. *Courtney v. Board of Trustees of the Md. State Retirement Systems,* 285 Md. 356, 362, 402 A.2d 885, 889 (1979); *Department of Natural Resources v. Linchester Sand & Gravel Corp.,* 274 Md. 211, 225, 334 A.2d 514, 523 (1975); *Snowden v. Mayor of Baltimore,* 224 Md. 443, 448, 168 A.2d 390, 392 (1961). Such a determination involves a matter of law, not of fact, and is appropriately one to be made by the court without a jury. *See Federal Radio Comm'n v. Nelson Bros. Bond & Mortgage Co.,* 289 U.S. 266, 275-76, 53 S. Ct. 627, 632 (1933); *Suburban Properties, Inc. v. Mayor of Rockville,* 241 Md. 1, 6, 215 A.2d 200, 203 (1965).

*Cf.* Administrative Procedure Act, Md. Code (1957, 1978 Repl. Vol., 1979 Cum. Supp.), Art. 41, § 255(e).[5] Accordingly, we now hold that there is no right to a jury trial in an action for a writ of mandamus brought to review a decision of an administrative agency on the ground that, based on the record, a reasoning mind could not reasonably have reached the factual conclusion reached by the agency.

Here the Board concluded, based on the record, that the policeman's disability was not service connected. The policeman brought an action for a writ of mandamus to review the Board's decision on the ground that its conclusion was not supported by the record. The trial court's function was limited to determining whether a reasoning mind reasonably could have reached the conclusion reached by the Board. Such a determination involved only a matter of law. The policeman was not entitled to a jury trial.

## II

The policeman next contends that he was denied due process of law under the fourteenth amendment of the United States Constitution.[6] He points out that the Board considered and relied upon a recommendation of the Medical Review Committee (Committee) which the Board did not receive until approximately nine days after the hearing. He asserts that as a result he was deprived of the right to refute the Committee's findings by the presentation of contrary evidence or by cross-examination. We do not reach the merits of this contention.

A party who knows or should have known that an administrative agency has committed an error and who, despite an opportunity to do so, fails to object in any way or

---

5. Art. 41, § 255 (e) provides in pertinent part:

"[Judicial] review [of an agency's final decision] shall be conducted by the court *without a jury.*" (Emphasis added.)

6. U.S. Const. amend. XIV provides in pertinent part:

"No state shall . . . deprive any person of life, liberty, or property without due process of law. . . ."

at any time during the course of the administrative proceeding, may not raise an objection for the first time in a judicial review proceeding. *Bulluck v. Pelham Wood Apts.,* 293 Md. 505, 518-19, 390 A.2d 1119, 1127 (1978); *Severn v. Mayor of Baltimore,* 230 Md. 160, 170-71, 186 A.2d 199, 204 (1962).

. Here the record shows that the Plan itself requires that before making its decision, the Board obtain a written opinion from the Committee. Thus, from 31 May 1977, when the policeman filed his application for service-connected disability retirement benefits, his attoreney knew or should have known that the Board was required to obtain and consider a Committee report.

The Committee recorded its findings in a written report dated 20 April 1978. Before a hearing was held, the policeman's attorney asked the Board to provide him with "medical reports." While he received various doctors' reports, he did not receive the Committee's report.[7] The Board held a hearing on 3 May 1978 at which time the Committee's report was not before it. Despite the fact that the policeman's attorney knew or should have known that the Board was required to obtain and consider the Committee's report, he neither objected to its absence nor requested that it be made available.

On 10 May 1978, the Board sent a written request to the Committee for a statement of its findings. On 12 May 1978, the policeman's attorney received a copy of this request. On 12 May 1978, the Committee sent the requested findings to the Board which forwarded a copy to the policeman's attorney. On 16 May 1978, he received a copy of the Committee's report. Thus, before the Board had made any determination, the policeman's attorney knew or should have known that it had obtained the Committee's report. Nevertheless, he did not request a further hearing.

On 19 May 1978, the Board, expressly relying on the Committee's report, determined that the policeman was

---

7. The attorney's request and the identity of the documents he received do not appear in the record. This information was proffered by the policeman's attorney at oral argument before this Court.

permanently disabled but that his disability was not service connected. On 22 May 1978, the policeman's attorney received a copy of the Board's written decision. As of this date, he knew that the Board had considered and relied on the Committee's report. Although Rule III (3) authorized the filing of a motion for a rehearing "on the grounds of error of law or newly discovered evidence," the policeman's attorney did not file such a motion. Instead, he filed a petition for a writ of mandamus.

These facts establish that throughout the course of the administrative proceeding the policeman's attorney knew or should have known of the alleged error. The record further shows that although he had ample opportunity, he failed to object. Because the issue of the alleged error was not raised during the administrative proceeding, it was not properly raised in the judicial review proceeding, and therefore is not properly before us.

### III

The policeman next contends that the Board erred when it refused to consider a Workmen's Compensation Commission (Commission) finding that his 19 March 1976 injury was related to his employment. He initially asserts that the principles of res judicata apply, and that the Commission's determination that that injury was one "arising out of and in the course of his employment" was conclusive with respect to the issue of whether his disability was service connected because it was "the result of his performance of his duties as an Employee." We do not agree.

The elements required for the application of the principles of res judicata are that the issue determined in a previous proceeding be identical to that presented in a subsequent proceeding, that the parties in the successive proceedings be the same, and that there be a final judgment of a court on the merits in the previous proceeding. *Nicholson v. Unsatisfied Claim & Judgment Fund Bd.,* 265 Md. 453, 458, 290 A.2d 384, 386 (1972); *Cecil v. Cecil,* 19 Md. 72, 80 (1862). While this Court has, on occasion, stated that in Maryland the

principles of res judicata do not apply to administrative agencies, *Gaywood Community Ass'n v. Metropolitan Transit Auth.,* 246 Md. 93, 100, 227 A.2d 735, 738-39 (1967); *Knox v. Mayor of Baltimore,* 180 Md. 88, 93, 23 A.2d 15, 17 (1941); *see Board of County Comm'rs of Cecil County v. Racine,* 24 Md. App. 435, 444-47, 332 A.2d 306, 311-13 (1975), recently we have indicated that under certain circumstances these res judicata principles are applicable.

In *White v. Prince George's County,* 282 Md. 641, 658, 387 A.2d 260, 270 (1978), this Court held that the Maryland Tax Court was a State administrative agency performing a quasi-judicial function and that the principles of res judicata were applicable. We have not, however, previously considered whether a quasi-judicial determination by an administrative agency is binding when an issue which appears to be identical arises under another statute. Courts in other jurisdictions which have considered similar questions have concluded that under such circumstances the principles of res judicata are inapplicable. More particularly, they have held that a quasi-judicial determination by one administrative agency is not binding on another administrative agency which is seeking to determine an apparently identical issue under a different statute. *See, e.g., Tipler v. E.I. duPont de Nemours & Co.,* 443 F.2d 125, 129 (6th Cir. 1971); *Gee v. Celebrezze,* 355 F.2d 849, 850 (7th Cir. 1966); *Lane v. Railroad Retirement Bd.,* 185 F.2d 819, 822 (6th Cir. 1950); *Sekov Corp. v. United States,* 139 F.2d 197, 198 (5th Cir. 1943); *Kroeneke v. Richardson,* 363 F. Supp. 891, 893 (D. Ore. 1973); *Miller v. Board of Trustees of the Police Pension Fund of New Orleans,* 286 So. 2d 788, 789 (La. App. 1974); In re *Long Island Lighting Co.,* 49 Misc. 2d 717, 268 N.Y.S.2d 366, 373-74 (1964). *See also Finnerman v. McCormick,* 499 F.2d 212, 214-15 (10th Cir.), *cert. denied,* 419 U.S. 1049, 95 S. Ct. 624 (1974); *NLRB v. Pacific Intermountain Express,* 228 F.2d 170, 176 (8th Cir.), *cert. denied,* 351 U.S. 952, 76 S. Ct. 850 (1956). *Contra United States v. Willard Tablet Co.,* 141 F.2d 141, 143 (7th Cir. 1944); *Rosinsky v. City of Binghamton,* 72 Misc. 2d 187, 338 N.Y.S.2d 683, 685 (1972).

The underlying rationale for such a conclusion is that although the issues before the two administrative agencies may appear to be identical, generally they are not. This is so because different statutes have different legislative histories, purposes, scopes of coverage, language, standards, procedures, and policies which may dictate opposite results. In his Administrative Law Treatise, Professor Davis recognizes the validity of this rationale when he writes:

> "[A] determination under one statute is not binding when the same question arises under another statute, even when the provisions of the two statutes are identical. Because the legislative history of two statutes is always different, because the purposes of two statutes are never the same, and because the context of provisions must be taken into account, the conclusion is probably sound that a determination under one statute need not necessarily be res judicata when the same question arises under identical words of another statute." [2 Davis Admin. Law Treatise § 18.04 at 577-78.]

We agree.

Applying this rationale to the facts of the instant case produces a clear result. Here the issues before the Commission and the Board appear to be identical because each involves a determination of whether an individual's injury is related to his employment. However, there are substantial differences between the Act and the Plan. The Act and the Plan have different origins. The Act was adopted by the Legislature while the Plan was established by agreement. The scope of coverage differs. The Act has statewide application to a broad spectrum of employees, Art. 101, § 21 (b) (1), while the Plan applies only to Prince George's County policemen. The Act and the Plan have different funding sources. The funds for awards under the Act come from the employer or his insurance carrier, Art. 101, § 16, while the funds for awards under the Plan are contributed by both the County and the policemen. § 7.1 and § 7.2.

Procedures also differ under the Act and the Plan, each of which establishes an exclusive and complete method for obtaining and enforcing its awards. *See St. Paul Fire & Marine Ins. Co. v. Treadwell,* 263 Md. 430, 436, 283 A.2d 601, 604 (1971). The Commission has the power to subpoena witnesses, § 8, and to determine a claim after whatever investigation it deems necessary, Art. 101, § 40, while the Board has no subpoena power and is required to obtain a written opinion of the Medical Review Committee before it makes its determination. § 4.3 (b). These seemingly minor procedural differences may have substantial impact because they may result in the presentation to the Commission and the Board of different facts upon which to base their respective decisions.

In addition and most important, the Act and the Plan use different language to establish the standards by which to determine whether an individual's injury is related to his employment. Article 101, § 15, provides that an employee shall be paid compensation for a disability "resulting from an accidental personal injury sustained by the employee *arising out of and in the course of his employment"* (emphasis added). Section 4.3 (c) (1) of the Plan provides that an employee shall be paid enhanced compensation for a disability "caused by an injury or sickness *suffered as a result of his performance of his duties as an Employee"* (emphasis added).

In Maryland, the phrase "arising out of and in the course of employment" has been extensively construed. *See, e.g., Knoche v. Cox,* 282 Md. 447, 455-56, 385 A.2d 1179, 1183-84 (1978); *Harrison v. Central Constr. Co.,* 135 Md. 170, 180, 108 A. 874, 878 (1919). On some few occasions, this Court has construed the phrase "performance of his duties" appearing in police retirement and pension plans. While we have on occasion drawn analogies between these phrases, we have nonetheless never found them to be identical. *Director of Finance v. Alford,* 270 Md. 355, 359, 311 A.2d 412, 414 (1973); *Police Comm'r of Baltimore City v. King,* 219 Md. 127, 134-35, 148 A.2d 562, 566 (1959); *Heaps v. Cobb,* 185 Md. at 383-84, 45 A.2d at 78. *See Board of Trustees of the*

*Employees' Retirement System of the City of Baltimore v. Grandinetti,* 269 Md. 733, 738, 309 A.2d 764, 766-67 (1973). Courts in other jurisdictions have found that phrases similar to "arising out of and in the course of employment" and "performance of his duties as an employee" have substantially different meanings. *See, e.g., Passmore Metal & Roofing Co. v. New Amsterdam Casualty Co.,* 147 F.2d 536, 539 (10th Cir. 1945); *Boston Retirement Bd. v. Contributory Retirement Appeal Bd.,* 340 Mass. 109, 110-11, 162 N.E.2d 821, 823 (1959); *Wormstead v. Town Manager of Saugus,* 308 N.E.2d 921, 923 (Mass. App. Ct. 1974). Under all of these circumstances, we are not persuaded that the standards established by the different language of the Act and the Plan for determining whether an individual's injury is related to his work are identical.

Because the Act and the Plan have different origins, coverage, funding sources, procedures, and standards, the issues presented to the Commisision and the Board, although they both involve the question whether the policeman's injury was related to his employment, were not identical. The principles of res judicata do not apply.

The policeman additionally maintains that even if res judicata is inapplicable, the findings of the Commission were probative evidence which should have been considered by the Board. Again, we do not agree. Because the issues before the Commission and the Board were not identical, it was not reversible error for the Board to refuse to consider the findings of the Commission. *See Carpenter v. Flemming,* 178 F. Supp. 791, 793 (N.D.W.Va. 1959) (dicta).

## IV

The policeman's final contention is that the Board's findings were not supported by the record. We have carefully reviewed the record and are persuaded that, based upon the evidence, a reasoning mind could reasonably have concluded, as did the Board, that the policeman's disability was not "service connected." Accordingly, we shall affirm.

*Order affirmed.*
*Costs to be paid by appellant.*