**Linda G. GUIDEN, Plaintiff,**

**v.**

**SOUTHEASTERN PUBLIC SERVICE AUTHORITY OF VIRGINIA and Thomas Perotti, Defendants.**

**Civ. A. No. 90–1366–N.**

United States District Court, E.D. Virginia, Norfolk Division.

April 15, 1991.

---

Linda G. Guiden, pro se.

Sharen Padgett Hughes, Wm. E. Rachels, Jr., Willcox & Savage, P.C., Norfolk, Va., for defendants.

## OPINION AND ORDER

DOUMAR, District Judge.

Plaintiff, proceeding *pro se*, brought this action against her former employer, Southeastern Public Service Authority of Virginia (hereinafter "SPSA"), and Thomas Perotti, an SPSA employee and plaintiff's former supervisor. Plaintiff alleges that the actions of both of the defendants during the term of her employment, culminating in her discharge, constitute race discrimination and sexual harassment in violation of Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"), as amended, 42 U.S.C. § 2000e *et seq.* Plaintiff also asserts pendent state law claims for breach of contract, intentional infliction of emotional distress and wrongful discharge.

Plaintiff filed her complaint on June 5, 1990. Defendant SPSA filed its answer accompanied by a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on July 16, 1990. Defendant's motion to dismiss was denied by order of this Court dated October 3, 1990. Defendant Perotti filed his answer accom-

panied by a Rule 12(b)(6) motion to dismiss on October 15, 1990. Defendant Perotti's motion to dismiss was denied by order filed December 13, 1990. On December 13, 1990, the plaintiff filed what was styled as a Motion to Use First Exhibit as Collateral. The defendants filed their response to this motion on December 26, 1990, which response asked this Court to require the plaintiff to clarify the relief she was seeking by virtue of her motion. Plaintiff filed the required explanation on February 8, 1991, stating that she wished to use an order from the Circuit Court of the City of Portsmouth affirming the Virginia Employment Commission's decision to grant her unemployment compensation benefits as collateral estoppel or *res judicata* to preclude the defendants from litigating the misconduct issue involved in that decision in the present Title VII suit. On February 26, 1991, the defendants made a motion to quash the *de bene esse* deposition of Patricia Daniels. The Court heard argument on the motion on February 27, 1991. At the hearing, the defendants represented to the court that a copy of the motion to quash and notice of the hearing had been delivered to the plaintiff's home on February 26, 1991. Plaintiff did not appear at the hearing. The Court made several attempts to contact the plaintiff by telephone but was unsuccessful. The Court left a message on the answering machine at the residence where plaintiff was scheduled to take the deposition, directing the deponent, Mrs. Daniels, not to participate in the deposition and advising the plaintiff that no deposition would be permitted without further order of the Court. Plaintiff did not respond to any of the Court's various communications. By order of February 27, 1991, United States Magistrate Judge Tommy E. Miller granted the defendants' motion to quash. Despite the court order not to take the deposition, plaintiff did so. On March 12, 1991, Magistrate Judge Miller certified the plaintiff for contempt pursuant to 28 U.S.C. § 636(e). On March 13, 1991, the plaintiff was ordered to appear before the Court to show cause why she should not be held in contempt for failure to obey Magistrate Judge Miller's order

quashing the deposition of Patricia Daniels and for avoiding and evading attempts to communicate personally with the plaintiff regarding the taking of the deposition. On March 15, 1991, the defendants made a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure for partial summary judgement on plaintiff's claims of sexual harassment under Title VII and her state law claims of intentional infliction of emotional distress and wrongful discharge. On March 26, 1991, the Court, with Judge J. Calvitt Clarke, Jr., presiding, found plaintiff in civil contempt, based on her failure to abide by the rules of the Court and her deliberate violation of a court order. Judge Clarke ordered the plaintiff to pay the defendants' costs incurred in attempting to contact the plaintiff and reschedule the deposition, which costs amounted to $150.00, as well as $100.00 for defendants' costs in having counsel present at the contempt hearing. Plaintiff was also prohibited from introducing the *de bene esse* deposition of Patricia Daniels into evidence at the trial of this matter, scheduled to commence on April 16, 1991.

The parties appeared before this Court on April 9, 1991, on defendants' motion for partial summary judgement and on plaintiff's motion to use the judgement of the Circuit Court as collateral estoppel or *res judicata*, and on April 15, 1991, on the defendants' motion for sanctions against the plaintiff for failing to comply with the contempt citation. For the following reasons, this Court DENIES plaintiff's motion to use the Circuit Court decision as collateral estoppel or *res judicata*. This Court also DENIES defendants' motion for partial summary judgement on the sexual harassment claim under Title VII and GRANTS defendants' motion for partial summary judgement on the state law claims of intentional infliction of emotional distress and wrongful discharge. Due to plaintiff's *pro se* status and to the tolerance shown to *pro se* litigants in this circuit, this Court declines to impose additional sanctions on the plaintiff. However, this Court ORDERS plaintiff to make a $25.00 payment, due and payable immediately, toward the discharge of the $250.00 assessed

against plaintiff by Judge Clarke in his March 26 order. Plaintiff is further ORDERED to pay $25.00 to named defense counsel each and every month beginning May 1, 1991, until the outstanding sum of $250.00 is fully and finally paid.

Pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, in the interests of judicial economy and to encourage the expedient resolution of this matter, the Court also exercises its discretion and severs the remaining claims in plaintiff's complaint. Plaintiff's claim for breach of contract will be tried before a jury, commencing April 16, 1991. Plaintiff's claims under Title VII for sexual harassment and race discrimination will be tried without a jury, which trial is to begin immediately following the parties' closing arguments to the jury on the breach of contract claim or upon any other appropriate conclusion to the contract action.

## FACTS

Plaintiff began her employment with defendant SPSA on or about March 25, 1985, as a Scale Attendant, under the supervision of one David Harris. For the first twelve months of her employment, plaintiff was "on probation"—her employment was on a trial basis until the expiration of the twelve month term. Plaintiff's probationary period ended on or about March 25, 1986. Upon successful completion of this term, plaintiff contends that her status changed from an at-will employee to a lifetime employee who could only be terminated for good and just cause. Defendant admits that plaintiff completed her probationary period but denies that plaintiff then assumed the status of a "permanent" lifetime employee.

In December 1987, plaintiff was promoted to the position of Control Room Operator, second shift, at SPSA's Refuse Derived Fuel Plant [hereinafter "RDF Plant"], where defendant Perotti was the plant manager. In the summer of 1988, a fire at the Naval Steam Plant forced the RDF Plant to shut down its processing operations. Because many of the RDF Plant employees could not perform their regular duties, alternative assignments were necessary. Some of these assignments required RDF Plant employees to travel to other SPSA facilities throughout the Tidewater area. On or about Friday, August 12, 1988, during this temporary shut down, the plaintiff was instructed by one of her supervisors, George Wilson, to report to SPSA's Oceana Transfer Station in Virginia Beach on the following Monday, August 15, 1988, for a one week term. The plaintiff refused the assignment. Plaintiff states that she was within her rights to refuse based upon her seniority status and upon the fact that her child care provider was located in close proximity to the RDF Plant. Supervisor Wilson stated that he explained to plaintiff that, regardless of her refusal, she was expected to report to work at Oceana on Monday morning and that if she did not she would be subject to discipline. Plaintiff did not report to Oceana on August 15 nor did she report there at any time during that week. Plaintiff's disrespectful behavior toward Supervisor Wilson and her failure to report for work at Oceana caused SPSA to assess two Group II offenses against plaintiff. Earlier that year, in April, 1988, plaintiff had received her first Group II offense for another incident of disregard of supervisory authority. The accumulation of three Group II offenses within one year is grounds for discharge pursuant to the Standards of Conduct section of the SPSA employee handbook. *SPSA Employee Handbook, pp. 32–33, para. 3.* Plaintiff alleges that she was placed on administrative suspension on or about August 13, 1988, and that she was discharged on or about August 15, 1988.

Upon her discharge, plaintiff applied to the Virginia Employment Commission [hereinafter "VEC"] seeking unemployment compensation benefits. On November 28, 1988, an Appeals Examiner held a hearing to determine if plaintiff was entitled to receive such benefits. The Examiner determined that plaintiff had been discharged for misconduct in connection with her employment, as defined under the Virginia Unemployment Compensation Act, Va.Code § 60.2–618.2, as amended, and denied her benefits. Plaintiff appealed this

decision to a Special Examiner of the Commission. The Commission overruled the Appeals Examiner's decision and found that plaintiff was entitled to receive unemployment compensation. The Circuit Court of the City of Portsmouth affirmed the Commission's decision. Plaintiff then filed a charge with the Equal Employment Opportunity Commission [hereinafter "EEOC"] pursuant to the requirements of Title VII and, on or about March 5, 1990, received a notice of right to sue from the EEOC. Plaintiff filed her complaint in the United States District Court for the Eastern District of Virginia on June 5, 1990.

## OPINION

### A. PRECLUSION

Title 28, United States Code, Section 1738, requires a federal court to give the same preclusive effect to state court judgements as the state court itself would do. Under the law of the Commonwealth of Virginia, collateral estoppel, or issue preclusion, prevents parties to the first action and their privies from relitigating any issue of fact actually litigated in the first proceeding and essential to a valid and final personal judgement. *Bates v. Devers,* 214 Va. 667, 202 S.E.2d 917, 920 (1974). It does not apply where a party against whom the claim is asserted did not have a full and fair opportunity to litigate the issue in the earlier action. *Allen v. McCurry,* 449 U.S. 90, 95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980) (*quoted in Slagle v. Slagle,* 11 Va. App. 341, 398 S.E.2d 346, 349 (1990)). *Res judicata,* or claim preclusion, bars relitigation of the same cause of action, or any part thereof, which could have been litigated in the earlier action, between the same parties and their privies. *Bates,* 202 S.E.2d at 920. The party asserting these defenses must demonstrate by a preponderance of the evidence that the claim or issue should be precluded by the prior judgement. *Id.*

In *Kendall v. C.F. Industries, Inc.,* 624 F.Supp. 1102 (N.D.Ill.1986), the plaintiff

employee brought an age discrimination action against his former employer.[1] The plaintiff argued that, under 28 U.S.C. § 1738, a determination made by the Illinois Department of Labor and affirmed by an Illinois state court that plaintiff had not been discharged for misconduct precluded the defendant from offering evidence of misconduct as a legitimate nondiscriminatory reason for plaintiff's discharge. *Id.* at 1103. The defendant maintained that the outcome of the unemployment compensation hearing had no relevance in the age discrimination proceeding and should not be granted preclusive effect. The court held that the finding of the Illinois Department of Labor that misconduct had not been a factor in plaintiff's discharge did not preclude relitigation of the misconduct issue in the age discrimination action. The court reasoned that the issue of the plaintiff's misconduct as a legitimate justification for his discharge in an age discrimination suit was not identical for issue preclusion purposes to the issue of misconduct as grounds for denial of unemployment compensation benefits. *Id.* at 1106. Applying Illinois law, the court stated that "when different standards are applied to the same facts in reaching a legal conclusion, the issues are not identical for purposes of issue preclusion." *Id.* In Illinois, to block an award of unemployment compensation, "an employer must show that the employee's misconduct was in wanton or wilful disregard of the employer's interests." *Id.* at 1107. The standard for misconduct as a reason for a nondiscriminatory discharge is lower; any lawful reason for a discharge meets a defendant's burden of production. *Id.*

In *Ross v. Communications Satellite Corp.,* 759 F.2d 355 (4th Cir.1985), the Fourth Circuit, applying Maryland law, held that the administrative findings of the Maryland Employment Security Administration [hereinafter "ESA"], affirmed by the Circuit Court for Baltimore City, did not preclude relitigation of the reason for

---

**1.** Although the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.,* was not passed as part of the Civil Rights Act of 1964, it is interpreted using case law applicable to Title

VII. *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985); *Kendall v. C.F. Industries, Inc.,* 624 F.Supp. 1102 (N.D.Ill.1986).

plaintiff's discharge in a Title VII action. In reaching its conclusion, the Court relied on a decision by the Maryland Court of Appeals, *Cicala v. Disability Review Bd. for Prince George's County,* 288 Md. 254, 418 A.2d 205 (1980), where the state court refused to give preclusive effect to the findings of the Appeals Referee of the ESA. "[A] judicial determination by one administrative agency is not binding on another adjudicator, 'which is seeking to determine an apparently identical issue under a different statute,' ... so long as there exist [sic] 'substantial differences' between the statutes themselves." *Ross,* 759 F.2d at 361–362 (*quoting Cicala,* 418 A.2d at 211–212) (citation omitted).

■■■ The Virginia Unemployment Compensation Act, Va.Code § 60.2–618 (Repl. Vol.1987), provides that an employee is disqualified for benefits "if the Commission finds such individual is unemployed because he has been discharged for misconduct connected with his work." In *Branch v. Virginia Employment Comm'n,* 219 Va. 609, 249 S.E.2d 180 (1978), the court defined the term "misconduct". "In our view, an employee is guilty of 'misconduct connected with his work' when he *deliberately* violates a company rule reasonably designed to protect the legitimate business interests of his employer, or when his acts or omissions are of such a nature or so recurrent as to manifest a *willful* disregard of those interests and the duties and obligations he owes his employer." 249 S.E.2d at 182. Thus, in Virginia, an employer using misconduct in connection with employment as a basis for denying an employee unemployment compensation benefits must show that the employee deliberately and willfully engaged in conduct evincing a complete disregard for the employer's workplace standards and policies. In an action under Title VII, however, the standard is quite different. All the employer must do to meet its burden of production is to provide the finder of fact with any lawful nondiscriminatory reason for the discharge.

■■ The plaintiff bears the burden of proving by a preponderance of the evidence that the administrative ruling of the Virginia Employment Commission, affirmed by the Circuit Court of the City of Portsmouth, has a preclusive effect on plaintiff's pending Title VII action. To meet this burden, the plaintiff must demonstrate that the issues or claims involved in both the VEC proceeding and in the pending Title VII action are essentially identical. However, because the standard involved in proving misconduct as a legitimate nondiscriminatory reason for a discharge in a Title VII action is not the same as the test applied in an unemployment compensation hearing to determine misconduct for purposes of a denial of unemployment compensation benefits, the issues are not identical. Preclusion is therefore inappropriate. The findings of the Virginia Employment Commission on the issue of misconduct in connection with employment, reached during a hearing to determine plaintiff's entitlement to unemployment compensation benefits, cannot be given preclusive effect in this Title VII action.

## B. MOTION FOR PARTIAL SUMMARY JUDGEMENT

The defendants made a motion for partial summary judgement on plaintiff's claims of sexual harassment, wrongful discharge and intentional infliction of emotional distress.

Summary judgement under Rule 56 of the Federal Rules of Civil Procedure is appropriate when the Court, viewing the record as a whole and in the light most favorable to the non-moving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgement as a matter of law. *Terry's Floor Fashions, Inc. v. Burlington Industries, Inc.,* 763 F.2d 604, 610 (4th Cir.1985). Once a party has properly filed evidence supporting the motion for summary judgement, the non-moving party may not rest upon mere allegations in the pleadings but must instead set forth specific facts illustrating genuine issues for trial. *Sherman v. City of Richmond,* 543 F.Supp. 447, 449 (E.D.Va.1982). A dispute about a material fact is genuine only if the evidence is such that a reasonable jury

could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### 1. Sexual Harassment

 There are two types of sexual harassment recognized by the courts. A *prima facie* case of *quid pro quo* sexual harassment, or sexual harassment where sexual consideration is demanded in exchange for job benefits, can be established by a showing that: (1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the employee's reaction to the harassment affected tangible aspects of the employee's compensation, terms, conditions, or privileges of employment. The employee's acceptance or rejection of the harassment must be an express or implied condition to the receipt of a job benefit or the cause of a tangible job detriment for liability to lie; and (5) the employer knew or should have known of the harassment and took no remedial action. *Spencer v. General Electric Co.*, 894 F.2d 651, 658 (4th Cir.1990). The establishment of the *prima facie* case creates an inference of *quid pro quo* sexual harassment, which shifts the burden of production to the defendant to rebut the presumption of harassment with legitimate, nondiscriminatory reasons for the employment decision at issue. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The plaintiff in the action presently before this Court failed to make out a *prima facie* case. Plaintiff did not allege, nor was there any evidence presented, that plaintiff's reaction to the alleged sexual harassment affected tangible aspects of her employment. Consequently, plaintiff's case is not one of *quid pro quo* sexual harassment.

 A plaintiff may also establish a violation of Title VII by proving that sexual harassment in the workplace has created a hostile or abusive work environment. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 66, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986). To pursue a "hostile work environment" claim, a plaintiff must show that: (1) the conduct in question was unwelcome; (2) the harassment was based on sex; (3) the harassment was sufficiently pervasive or severe enough to create an abusive environment; and (4) some basis exists for imputing liability to the employer. *Paroline v. UNISYS Corp.*, 879 F.2d 100, 105 (4th Cir.1989), *vacated on other grounds*, 900 F.2d 27 (4th Cir.1990). To determine whether the harassment was sufficiently severe or pervasive, the fact finder must examine the evidence from both an objective and a subjective perspective. To prevail on a hostile environment claim, the plaintiff must first demonstrate that the harassment interfered with her ability to perform her work or significantly affected her psychological wellbeing. If the plaintiff is successful in meeting this burden, the fact finder must then make an objective determination, deciding whether the harassment would have the same affect on a reasonable person in the plaintiff's position. *Id.* at 105.

 Plaintiff in this case bases her claim for sexual harassment on four statements allegedly made by the defendant Thomas Perotti: (1) defendant's statement to plaintiff in the presence of a male co-worker that "if you guys have anything going on between you two, let me be the first to know;" (2) defendant's statement to plaintiff that she looked nice and his inquiry as to whether she was going hooking; (3) defendant's statement, made while laughing, that the plaintiff was wearing a padded bra; and (4) defendant's statement that he wanted plaintiff's body. Plaintiff also states that this conduct made the work environment unpleasant and burdensome. Although the first three statements taken alone do not appear to amount to sexual harassment, the fourth statement, if true, coupled with the other three, arguably present a colorable claim under the "hostile work environment" theory. Because plaintiff is proceeding *pro se* and because of this Court's awareness of the leniency with which *pro se* petitions are treated, this Court is reluctant to dismiss plaintiff's sexual harassment claim on summary judge-

ment, where the plaintiff's lack of legal knowledge and her unfamiliarity with the rules of pleading may have hampered her ability to better present her claim. This Court cannot say, with any degree of certainty, at this stage of the proceedings, that a reasonable fact finder could not return a verdict for the plaintiff on this claim.

### 2. Wrongful Discharge

 The Code of Virginia, § 8.01–248, provides for a one year statute of limitations for all tort claims not related to bodily injury. Employee discharge in Virginia is recognized as a tort. *Bowman v. State Bank of Keysville*, 229 Va. 534, 331 S.E.2d 797 (1985). The Fourth Circuit, in *Costantino v. Jaycor*, 816 F.2d 671 (4th Cir.1987) (unpublished) (text in Westlaw), held that this one year statute of limitations applies to actions for wrongful discharge. Although the *Costantino* case is an unpublished disposition and such decisions are not binding authority, the Fourth Circuit's holding in that case supports this Court's reasoning in this action.

Plaintiff was discharged on or about August 15, 1988. Her complaint was filed on June 5, 1990, more than one year after the action which formed the basis of her cause of action for wrongful discharge occurred. Therefore, under the applicable statute of limitations, plaintiff's claim for wrongful discharge is time-barred.

### 3. Intentional Infliction of Emotional Distress

 The Code of Virginia, § 65.1–1 *et seq.*, the Virginia Worker's Compensation Act, has been held to be the exclusive remedy for an employee who suffers an injury as a result of the intentional tortious conduct of a fellow employee.[2] In *Haddon v. Metropolitan Life Ins. Co.*, 239 Va. 397, 389 S.E.2d 712 (1990), an employee sued her employer for, among other things, infliction of emotional harm caused by a fel-

low employee's alleged harassment and sexual discrimination. The Supreme Court of Virginia held that these injuries were the result of an "accident" as such term is defined by the Worker's Compensation Act and that, consequently, the employee was limited to recovery under the Act.

The same rule of law applies to the plaintiff in this case. The Worker's Compensation Act establishes the boundaries of her recovery. No cause of action outside the parameters of the Act is permitted.

## CONCLUSION

This Court DENIES plaintiff's motion to use the decision of the Circuit Court of the City of Portsmouth, affirming the decision of the Virginia Employment Commission, as collateral estoppel or *res judicata*. This Court DENIES defendants' motion for partial summary judgement on the sexual harassment claim under Title VII and GRANTS defendants' motion for partial summary judgement on the state law claims of wrongful discharge and of intentional infliction of emotional distress. This Court also ORDERS plaintiff to make a $25.00 payment immediately toward the full sum of $250.00 assessed against her for contempt of court and further ORDERS her to pay $25.00 per month to named defense counsel every month beginning May 1, 1991, until the outstanding sum is fully discharged. Finally, this Court severs the remaining counts of plaintiff's complaint and ORDERS separate trials for the breach of contract claim and for the claims of sexual harassment and race discrimination pursuant to Title VII.

IT IS SO ORDERED.

---

**2.** The Code of Virginia, § 8.01–244(A), provides for a two year statute of limitations for personal injury. The plaintiff filed her suit on June 5, 1990. Therefore, recovery may be had, if at all, only for those acts of the defendants allegedly causing emotional distress occurring after June 5, 1988.