675 A.2d 138

MEADOWRIDGE INDUSTRIAL CENTER
LIMITED PARTNERSHIP

v.

HOWARD COUNTY, Maryland, et al.

No. 1110, Sept. Term, 1995.

Court of Special Appeals of Maryland.

April 3, 1996.

Reconsideration Denied May 28, 1996.

412

Steven K. Fedder (Kurt J. Fischer, Thomas E.D. Mills-paugh, Marta D. Harting and Piper & Marbury, on the brief), Baltimore, for Appellant.

Paul T. Johnson (Barbara M. Cook, County Solicitor, and F. Todd Taylor, Jr., Senior Assistant County Solicitor, on the brief), Ellicott City, for appellee, Howard County.

Ronald S. Schimel (Robert H. Levan, Elissa D. Levan and Levan, Schimel, Belman & Abramson, P.A., on the brief), Columbia, for appellee, Browning Ferris, Inc.

Argued before BISHOP, WENNER and DAVIS, JJ.

BISHOP, Judge.

Appellee, Browning Ferris, Inc. ("BFI"), petitioned the Zoning Board of Howard County for the establishment of a Solid Waste Overlay Zone on a 17.3 acre parcel of land. The petition, which would allow BFI to construct and operate a solid waste transfer and recovery station on the property, was granted by the Zoning Board, and appellant, Meadowridge Industrial Center Limited Partnership ("Meadowridge"), appealed that decision to the Circuit Court for Howard County. The circuit court affirmed the Board's decision, and Meadowridge noted a timely appeal to this Court.

## ISSUES

Appellees, BFI and Howard County, raise the following threshold issue:

I. Is the issue of the validity of the Howard County Solid Waste Plan properly before this Court on appeal?

Meadowridge, in turn, raises the following issues:

II. If the issue of validity is properly before this Court, was the Howard County Solid Waste Plan properly passed into law?

III. Did the Zoning Board commit error by misconstruing the "compelling reasons" requirement established by Howard County Zoning Regulation § 124(A)?

## FACTS

### A. The Solid Waste Overlay District

Howard County Zoning Regulation § 124 establishes the Solid Waste Overlay District, which is designed "to provide [the] opportunity for solid waste processing facilities not allowed in other zoning districts and to encourage re-use and recycling of solid waste in lieu of disposal at a landfill." H.C.Z.R. § 124(A). The Solid Waste Overlay District is a floating district, and may be applied to land only if the Zoning Board finds, "upon review of a specific proposal and Preliminary Development Plan, that application of the District at a proposed location will meet the requirements established in [§ 124]." H.C.Z.R. § 124(A).

Because of the nature of the uses in a Solid Waste Overlay District, such a district may be applied only to land zoned M–1 (Manufacturing, Light) or M–2 (Manufacturing, Heavy). H.C.Z.R. §§ 124(A); 124(F)(2)(a). The Zoning Board may grant a petition to apply a Solid Waste Overlay District to land zoned M–2 as long as the petition: 1) complies with the requirements of H.C.Z.R. § 124(F)(1); and 2) satisfies the criteria established in H.C.Z.R. § 124(F)(2). The Zoning Board may grant a petition to apply a Solid Waste Overlay District to land zoned M–1 as long as: 1) the petition complies with the requirements of H.C.Z.R. § 124(F)(1); 2) the petition satisfies the criteria established in H.C.Z.R. § 124(F)(2); 3) there is a "compelling reason" for doing so (H.C.Z.R.

§ 124(A)); and 4) the use in the Solid Waste Overlay District is limited to a waste transfer facility or a material recovery facility (H.C.Z.R. § 124(A)).

Howard County Zoning Regulation § 124(F)(1) requires that all petitions for the establishment of a Solid Waste Overlay District contain: 1) a boundary survey of the property covered by the petition (§ 124(F)(1)(a)); 2) an "operations plan" (§ 124(F)(1)(b)); 3) a "preliminary development plan" (§ 124(F)(1)(c)); 4) a description of available markets and intended users of the products and materials (§ 124(F)(1)(d)); 5) a rehabilitation plan, if "a rubble landfill or land clearing debris landfill is proposed" (§ 124(F)(1)(e)); and 6) a summary of other local, state, and federal requirements that will apply to the proposed facility. § 124(F)(1)(f).

Regulation § 124(F)(2) requires that a petition for the establishment of a Solid Waste Overlay District meet the following criteria: 1) the district will overlay land zoned M–1 or M–2 (§ 124(F)(2)(a)); 2) the proposed uses will accomplish the purposes of the Solid Waste Overlay District (§ 124(F)(2)(b)); 3) safe road access will be available to the site (§ 124(F)(2)(c)); 4) setbacks and landscaped areas will provide adequate buffering of the proposed uses from existing land uses in the vicinity (§ 124(F)(2)(d)); 5) outdoor uses will be screened from roads and residential intersections (§ 124(F)(2)(e); 6) the facility will not result in odors, noise, smoke, or other substances or conditions that will adversely affect the surrounding area (§ 124(F)(2)(f)); 7) the operation will be conducted in an environmentally sound manner (§ 124(F)(2)(g)); 8) if part of the area is to be used for retail sales, that area will provide safe ingress and egress for retail customers and will be clearly accessory to the principal use (§ 124(F)(2)(g)); 9) the proposed facility is consistent with the Howard County Solid Waste Management Plan. § 124(F)(2)(i).

The two provisions applicable to the disposition of the case *sub judice* are: 1) the requirement that there be a "compelling reason" for the establishment of a Solid Waste Overlay District on land zoned M–1; and 2) the requirement that all

petitions for the establishment of a Solid Waste Overlay District be consistent with the Howard County Solid Waste Management Plan.

### B. The Howard County Solid Waste Management Plan

Each Maryland county is required to have a solid waste management plan under Md.Code (1982, 1996 Repl.Vol.) § 9-503 of the Environment Article (Envir.), which reads as follows:

**§ 9-503. County plans—Required; review by governing body of county; revision or amendment.**

(a) *Requirement.*—Each county shall have a county plan or a plan with adjoining counties that:

(1) Is approved by the Department;

(2) Covers at least the 10-year period next following adoption by the county governing body; and

(3) Deals with:

(i) Water supply systems;

(ii) Sewerage systems;

(iii) Solid waste disposal systems;

(iv) Solid waste acceptance facilities; and

(v) The systematic collection and disposal of solid waste, including litter.

(b) *Review by governing body of county.*—Except as provided in § 9-515 of this subtitle, each county governing body shall review its county plan at least once every 3 years in accordance with a schedule set by the Department.

(c) *Revision or amendment.*—Each county governing body shall adopt and submit to the Department a revision or amendment to its county plan if:

(1) The governing body considers a revision or amendment necessary; or

(2) The Department requires a revision or amendment.

(d) *Public hearing prior to adoption.*—

(1) Before a county governing body adopts any revision or amendment to its county plan or adopts a new county plan, the governing body shall:

(i) Conduct a public hearing on the county plan, revision, or amendment that may be conducted jointly with other public hearings or meetings; and

(ii) Give the principal elected official of each municipal corporation that is affected notice of the county plan, revision, or amendment at least 14 days before the hearing.

(2)

(i) Notice of the time and place of the public hearing, together with a summary of the plan, revision, or amendment, shall be published in at least 1 newspaper of general circulation in the county once each week for 2 successive weeks, with the first publication of notice appearing at least 14 days before the hearing.

(ii) Notice of the public hearing may be a part of the general notice listing all other items to be considered during the public hearing or meeting.

A new proposed Howard County Solid Waste Management Plan was first introduced and read by the Howard County Council on February 7, 1994, and a public hearing on that plan was held on February 22, 1994. The Howard County Council eventually passed a plan on June 6, 1994.

The proposal, which was first read on February 7 and on which hearings were held on February 22, recognized that "a transfer station will be necessary to support waste export[,]" and provided that "the County will own and operate the transfer station...." It also established that the preferred location for the site would be the Alpha Ridge Landfill.

The plan passed on June 6 contains some significant changes from the plan that was initially read on February 7 and on which hearings were held on February 22. Instead of requiring that the County own the transfer station, the plan provides that the County "**may** own and operate the transfer station...." (emphasis added) Also, unlike the initial plan,

the plan passed on June 6 recognizes the potential for a BFI-owned facility on the 17.3 acre tract in Elkridge. The Howard County Council never gave any notice of these changes and never held any hearings on them before they were adopted.

## C. Disposition of BFI's Petition

BFI petitioned the Zoning Board for the placement of a Solid Waste Overlay District on a 17.3 acre lot, zoned M–1, located in Elkridge, Maryland; the purpose of the petition is to allow BFI to build and operate a solid waste transfer station on the property. The station would be designed to accept up to 2,000 tons, per day, of solid waste collected in Howard, Anne Arundel, Harford and Baltimore Counties and Baltimore City, and to compact such waste into twenty-five ton loads. Once compacted, the waste would be shipped to landfills in Virginia and West Virginia. The operation would be continuous, running twenty-four hours a day, seven days a week, and would handle 40 to 50 collector trucks an hour.

Before the Zoning Board, one of the protestants, Blue Stream Partnership, moved to defer consideration of the petition on the ground that the Howard County Solid Waste Management Plan was not validly passed. According to Blue Stream, the adoption of the changes to the original proposal without notice and a hearing made the plan passed on June 6 invalid. The Zoning Board rejected this argument, and, after hearing from all interested parties, granted BFI's petition. In its opinion granting BFI's petition, the Zoning Board found that: 1) BFI's petition complies with the Howard County Solid Waste Management Plan; and 2) because BFI's petition complies with the Howard County Solid Waste Management Plan, there is a "compelling reason" for establishing a Solid Waste Overlay District on BFI's land.

Meadowridge appealed the Zoning Board's decision to the Circuit Court for Howard County. In its appeal, Meadowridge advanced a twofold argument: 1) the Zoning Board failed to find and articulate a "compelling reason" for establishing a Solid Waste Overlay District on BFI's Elkridge property; and 2) the Howard County Solid Waste Manage-

ment Plan, with which BFI's proposed facility is required to be consistent, is invalid because significant amendments to the original proposal were passed without notice and a hearing. The circuit court upheld the Zoning Board's decision, and Meadowridge noted a timely appeal to this Court.

## DISCUSSION

### Standard of Review

We recently stated the standard of review in a zoning appeal in *Leo J. Umerley v. People's Counsel for Baltimore County*, 108 Md.App. 497, 672 A.2d 173 (1996):

> The order of a county zoning authority 'must be upheld if it is not premised upon an error of law and if [its] conclusions reasonably may be based upon the facts proven.'

An application of the above standard requires that we undertake the three-step analysis set forth by this Court in *Comptroller v. World Book Childcraft*, 67 Md.App. 424 [508 A.2d 148] (1986):

> 1. First, the reviewing court must determine whether the agency recognized and applied the correct principles of law governing the case. The reviewing court is not constrained to affirm the agency where its order 'is premised solely upon an erroneous conclusion of law.'
>
> 2. Once it is determined that the agency did not err in its determination or interpretation of the applicable law, the reviewing court next examines the agency's factual findings to determine if they are supported by substantial evidence, *i.e.*, by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion....
>
> 3. Finally, the reviewing court must examine how the agency applied the law to the facts. This, of course, is a judgmental process involving a mixed question of law and fact, and great deference must be accorded to the agency. The test of appellate review of this function is 'whether ... a reasoning mind could reasonably have reached the

conclusion reached by the [agency], consistent with a proper application of the [controlling legal principles].

Also, unlike our review of a trial court's judgment, we will only uphold the decision of an agency on the basis of the agency's reasons and findings. We may search the record for evidence to support a trial court's judgment; and we may sustain that judgment for a reason plainly appearing on the record, even if the reason was not relied on by the trial court. But we may not uphold an agency's decision 'unless it is sustainable on the agency's findings and for the reasons stated by the agency.'

*Id.* at 504, 672 A.2d at 176 (citations omitted).

## I. Preservation of Validity Issue

■ According to Meadowridge, the Howard County Solid Waste Management Plan passed on June 6, 1994 contains significant changes from the provisions of the proposed plan that was introduced on February 7, 1994 and on which hearings were held on February 22, 1994. Thus, Meadowridge argues, the Howard County Council was required to hold new hearings on the plan passed on June 6. Because it did not, Meadowridge asserts that the plan is invalid, and that the Zoning Board's reliance on it constitutes reversible error.

In response, appellees point out that Meadowridge did not raise the issue of the validity of the June 6 plan in the proceedings before the Zoning Board. Although the issue was raised before the Zoning Board, it was raised by Blue Stream Partnership, another party opposing BFI's petition; and the Zoning Board rejected Blue Stream's argument on the issue. Appellees argue that because Meadowridge itself did not raise the issue before the Zoning Board, it has not preserved the issue for our review.

The general rule regarding preservation of issues in administrative cases was stated by the Court of Appeals in *Cicala v. Disability Review Board for Prince George's County*, 288 Md. 254, 418 A.2d 205 (1980):

> A party who knows or should have known that an administrative agency has committed an error and who, despite an opportunity to do so, fails to object in any way or at any time during the course of the administrative proceeding, may not raise an objection for the first time in a judicial review proceeding.

*Id.* at 262, 418 A.2d 205. *Cicala,* however, involved a different factual scenario from the one *sub judice.* In *Cicala,* the issue raised by the appellant had never been raised before, or decided by, the administrative agency. By contrast, in the case *sub judice,* the issue of the validity of the Howard County Solid Waste Management Plan was raised before, and decided by, the Zoning Board; the only problem is that the appellant in this appeal—Meadowridge—was not the party that raised the issue. Thus, we must determine whether Meadowridge's failure to raise the issue of the validity of the plan in the Zoning Board's proceedings bars it from raising the issue in the case *sub judice,* even though the issue was raised by another party in the administrative proceedings.

We hold that Meadowridge's failure to raise the issue of the validity of the Howard County Solid Waste Management Plan in the proceedings before the Zoning Board does not bar it from raising the issue in this appeal. The fact that another party protesting the BFI plan raised the issue in those proceedings was sufficient to preserve the issue for our review.

Our ruling stems from the rationale for the preservation requirement. The primary purpose of the rule requiring a party to raise an issue in an administrative proceeding before it can raise that same issue again on appeal is to give the administrative agency the opportunity to decide the issue first; when an appellate court is the first to decide an issue, it deprives the agency of that opportunity. *See Bulluck v. Pelham Wood Apartments,* 283 Md. 505, 518–19, 390 A.2d 1119 (1978) (noting that " '[a] reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the Commission of an opportunity to consider the

matter, make its ruling, and state the reasons for its action.' ") (quoting *Unemployment Compensation Commission v. Aragon*, 329 U.S. 143, 155, 67 S.Ct. 245, 251, 91 L.Ed. 136 (1946)). *Cf. State v. Bell*, 334 Md. 178, 189, 638 A.2d 107 (1994) (rule requiring party to raise issue in criminal proceedings before appellate review of that issue may be had is to ensure fairness in case and promote orderly administration of the law; interests of fairness are furthered by requiring attorneys to bring the position of their clients to the attention of the lower court so that the lower court can pass upon, and possibly correct, any errors in the proceedings); *Medley v. State*, 52 Md.App. 225, 231, 448 A.2d 363 (1982) (rule requiring party to raise issue in criminal proceedings before appellate review of that issue may be had "is a matter of basic fairness to the trial court and to opposing counsel, as well as being fundamental to the proper administration of justice"). Thus, the fact that the validity issue was raised in the proceedings before the Zoning Board is sufficient to satisfy the purposes of the preservation requirement.

In support of their argument that the issue is not preserved for our review, BFI and Howard County cite several cases that establish the rule that a criminal defendant cannot rely on his co-defendant's objection to preserve an issue for appeal. *See Osburn v. State*, 301 Md. 250, 253, 482 A.2d 905 (1984); *Ezenwa v. State*, 82 Md.App. 489, 514–15, 572 A.2d 1101 (1990). We note, however, that the application of this rule in cases where the identity of the objecting party has no bearing on the ruling has been criticized. *See* Joseph F. Murphy, Jr., *Maryland Evidence Handbook* § 102(C), at 13 (2nd ed. 1993). In administrative cases where the identity of the objecting party has no bearing on the decision, the purposes of the preservation rule are satisfied. Accordingly, we decline to extend the rule established in *Osburn* and *Ezenwa* to administrative cases, like the one *sub judice*, where the identity of the objecting party has no bearing on the agency's decision.

Because the issue of the validity of the Howard County Solid Waste Management Plan was raised before, and decided by, the Zoning Board, and because the identity of the object-

ing party had no bearing on the Zoning Board's decision on that issue, we hold that the issue is preserved for our review. Of course, had Meadowridge taken a position inconsistent with that of Blue Ridge, then we would, of necessity, hold that it had waived any right to appeal this issue.

## II. Validity of Solid Waste Plan

■ As noted above, the Howard County Solid Waste Management Plan, with which BFI's proposed transfer facility must be consistent under H.C.Z.R. § 124(F)(2)(i), is mandated by Envir. § 9–503. That statute contains a notice and hearing requirement, which reads as follows:

(d) *Public hearing prior to adoption.*—(1) Before a county governing body adopts any revision or amendment to its county plan or adopts a new county plan, the governing body shall:

(i) Conduct a public hearing on the county plan, revision, or amendment that may be conducted jointly with other public hearings or meetings; and

(ii) Give the principal elected official of each municipal corporation that is affected notice of the county plan, revision, or amendment at least 14 days before the hearing.

(2)

(i) Notice of the time and place of the public hearing, together with a summary of the plan, revision, or amendment, shall be published in at least 1 newspaper of general circulation in the county once each week for 2 successive weeks, with the first publication of notice appearing at least 14 days before the hearing.

(ii) Notice of the public hearing may be a part of the general notice listing all other items to be considered during the public hearing or meeting.

As noted, *supra,* the Howard County Council first introduced a proposed Howard County Solid Waste Management Plan on February 7, 1994, and held a hearing on that proposal on February 22, 1994. The plan that was first introduced on

February 7, and on which a hearing was held on February 22, recognized that "a transfer station will be necessary to support waste export[,]" and provided that "the County will own and operate the transfer station...." (emphasis added). It also established that the preferred location for the transfer station would be the Alpha Ridge Landfill.

The Howard County Council finally passed the Howard County Solid Waste Management Plan on June 6, 1994, but with some significant changes from the proposal that was first read on February 7, and on which a hearing was held on February 22. Instead of requiring that the County own the transfer station, the June 6 plan states that the County "**may** own and operate the transfer station...." (emphasis added). Also, unlike the February proposal, the plan passed on June 6 recognizes the potential for a BFI-owned facility on the 17.3 acre tract in Elkridge. The Howard County Council never advertised these changes to the public and never held a hearing on them.

█ Meadowridge argues that the failure of the Howard County Council to give notice of or hold a hearing on the changes adopted on June 6 invalidates those changes. This invalidity, argues Meadowridge, nullifies the Zoning Board's approval of BFI's petition because of the applicable regulations that require the petition to be consistent with the Howard County Solid Waste Management Plan. We agree.

█ The general rule is that when the state legislature has prescribed the manner in which a local government may pass an ordinance the local government must follow those prescriptions; if the local government fails to do so, the ordinance will be considered void and set aside. *See Walker v. Board of County Commissioners of Talbot County*, 208 Md. 72, 86–87, 116 A.2d 393 (1955) (county's power to zone or rezone can be exercised only to the extent and in the manner prescribed by the legislature; zoning ordinance challenged by appellant was passed in accordance with procedures established by enabling legislation, and therefore was valid). *See also* 62 C.J.S. *Municipal Corporations* § 416(b), pgs. 798–99

(1949) ("as a general rule, the method or manner of enacting municipal legislation is controlled by statute or charter[ ]"; "[t]hus, as a rule, the power of a municipal corporation to legislate must be exercised in the manner prescribed, or the enactment will be considered void and set aside[ ]"). An extension of this rule is the principle that where the legislature requires notice and a hearing before the passage of a local ordinance, and where the ordinance that was advertised and on which a hearing was held is substantially different from the ordinance proposed to be passed, the local legislative body must give new notice and hold a new hearing before that ordinance may be enacted. *See von Lusch v. Board of County Commissioners of Queen Anne's County,* 268 Md. 445, 454, 302 A.2d 4 (1973).

In *von Lusch,* the ordinance at issue was a zoning regulation involving airports. The state legislature established a procedure for the passage of zoning ordinances, under Md. Ann.Code art. 66B, § 4.04, which provided as follows:

The local legislative body shall provide for the manner in which such [zoning] regulations and restrictions and the boundaries of such districts shall be determined, established, and enforced, and from time to time amended, supplemented, modified, or repealed. However, no such regulation, restriction, or boundary shall become effective until after at least one public hearing in relation thereto, at which parties in interest and citizens shall have an opportunity to be heard. At least fifteen (15) days' notice of the time and place of such hearing shall be published in an official paper or a paper of general circulation in said jurisdiction.

Initially, the County Commissioners of Queen Anne's County proposed a zoning ordinance that would have deemed all existing airports and airstrips non-conforming uses; as such, those airports and airstrips would have had to close down if they could not qualify, after petitioning the County Board of Appeals, for a special exception. *Id.* at 455, 302 A.2d 4. The County Commissioners gave notice of the proposed ordinance and held a hearing on it; however, they subsequently passed

an ordinance, without giving new notice or holding a new hearing, that deemed all existing airports and airstrips to be conditional uses and that omitted any mention of the Board of Appeals. *Id.* at 456, 302 A.2d 4. The Court of Appeals held that the ordinance was invalid because of the County Commissioners' failure to give notice of the ordinance or hold a new hearing, explaining:

> This action of conferring a special exception status on the uses thereby making them a permitted conforming use not subject to phasing out or other restrictions applicable to the originally proposed non-conforming use status is a most substantial change in both theory and practical application of the provisions of that ordinance to those uses. One might say that it was practically a 180 degree change of position. Such a substantial change must be the subject of another notice and hearing. . . .

*Id.* *See also Rasnake v. Board of County Commissioners of Cecil County,* 268 Md. 295, 304–05, 300 A.2d 651 (1973) (zoning ordinance advertised to public and on which hearing was held did not require bond for the maintenance of a mobile home, while the zoning ordinance that eventually passed and that was not subject of new notice and hearing did require a bond for maintenance of a mobile home; such a difference was substantial, and the failure of the local legislative authority to give new notice or hold new hearings invalidated the ordinance).

▪ We recognize that, unlike *Walker, von Lusch,* and *Rasnake,* the local law involved in the case *sub judice* is a solid waste management plan, and not a zoning ordinance. Nevertheless, the same principles apply. Because the state legislature has mandated that a county's solid waste management plan only be enacted after notice is afforded the public and a hearing is held, any amendment that substantially changes a plan which has already been advertised and on which hearings have already been held requires that new notice and a new hearing on that amendment be afforded. If the new notice and hearing are not afforded, passage of the amendment is invalid.

As noted, *supra,* the plan that passed on June 6, 1994 provides that Howard County "may" own and operate the solid waste transfer station built in the county; it also recognizes the potential for a BFI-owned transfer station in Elkridge. These constitute substantial changes from the proposed plan that was advertised to the public and on which hearings were held in February, 1994. That proposal provided that Howard County "will" own and operate the transfer station, and that the preferred site for that station would be the Alpha Ridge Landfill. Because the plan adopted on June 6, 1994 contains substantial changes from the proposal that was the subject of notice and a hearing in February, 1994, the Howard County Council was required to give new notice and hold new hearings on the June 6 plan; and because no new notice was afforded and no new hearings were held, the June 6, 1994 plan is invalid. Accordingly, it was error for the Zoning Board to approve BFI's petition for the establishment of a Solid Waste Overlay District on the 17.3 acre Elkridge property. *Cf. Insurance Commissioner v. Equitable Life Assurance Society,* 339 Md. 596, 615–17, 664 A.2d 862 (1995) (administrative agency is not empowered to render declaratory judgment with respect to constitutionality of statute and thus has no authority to declare statute unconstitutional; however, lack of authority to issue declaratory judgment or ruling on constitutionality of statute does not mean that administrative agency official, in course of rendering decision in matter falling within agency's jurisdiction, must ignore applicable law simply because source of that law is State or Federal constitution).

By this opinion, we do not intend to hold that it would be improper for the Council to make changes based on issues raised and on which evidence was produced at a properly advertised and conducted hearing.

### III. "Compelling Reason" Requirement

Because of the foregoing, it is not necessary that we address this issue; however, for the guidance of the Board, we will do so.

■ Meadowridge also argues that the Zoning Board erred in granting BFI's petition because it misconstrued the "compelling reason" requirement established by H.C.Z.R. § 124(A). We agree.

As noted above, the Zoning Board may grant a petition to apply a Solid Waste Overlay District to land zoned M–2 as long as the petition: 1) complies with the requirements of H.C.Z.R. § 124(F)(1); and 2) satisfies the criteria established in H.C.Z.R. § 124(F)(2). The Zoning Board may grant a petition to apply a Solid Waste Overlay District to land zoned M–1 as long as: 1) the petition complies with the requirements of H.C.Z.R. § 124(F)(1); 2) the petition satisfies the criteria established in H.C.Z.R. § 124(F)(2); 3) there is a "compelling reason" for doing so (H.C.Z.R. § 124(A)); and 4) the use in the Solid Waste Overlay District is limited to a waste transfer facility or a material recovery facility (H.C.Z.R. § 124(A)). Because the Solid Waste Overlay District is a "floating district," the Zoning Board is required to review specifically each petition to ensure that the application of the Solid Waste Overlay District at a proposed location will meet the applicable requirements. H.C.Z.R. § 124(A).

The land on which BFI wants to establish a Solid Waste Overlay District is zoned M–1. On page nine of its decision, the Zoning Board noted the requirement in H.C.Z.R. § 124(A) that it find compelling reasons for the establishment of a Solid Waste Overlay District on BFI's property. It then proceeded to articulate what purported to be such a compelling reason:

The Solid Waste Management Plan adopted by the County Council prior to the beginning of this hearing establishes compelling circumstances for a waste transfer station. That plan references the necessity for the construction of alternatives to depositing waste in the Alpha Ridge Landfill and recommends the construction of a waste transfer station by the private sector as one of those alternatives. The plan further indicates that a waste transfer station must be implemented in order to support a waste export plan. There are currently no other waste transfer stations in Howard County, and this facility is needed to implement

components of the Solid Waste Management Plan. For these reasons, and others mentioned in the Solid Waste Management Plan itself, the Board concludes that compelling reasons exist for the creation of SW District on this site.

(References omitted).

As Meadowridge correctly asserts, the Zoning Board is essentially saying here that a compelling reason exists to establish a Solid Waste Overlay District on BFI's property because BFI's petition is consistent with the Howard County Solid Waste Management Plan. Implicit in the Zoning Board's statement of compelling reasons is an interpretation of the regulation that allows consistency with the Howard County Solid Waste Management Plan to be a "compelling reason" for establishing a Solid Waste Overlay District on M–1 property.

In *Schweitzer v. Brewer*, 280 Md. 430, 374 A.2d 347 (1977), the Court of Appeals established the following principles of statutory construction:

[T]he cardinal rule of construction of a statute is to effectuate the actual intention of the legislature ... The primary source from which we glean the legislative intent is the language of the statute itself. When the intent is expressed in clear and unambiguous language, [an appellate court] will carry it out, if no constitutional guarantees are impaired. Words are granted their ordinary signification so as to construe the statute according to the natural import of the language used without resorting to subtle or forced interpretations for the purpose of extending or limiting its operation. If reasonably possible the parts of a statute are to be reconciled and harmonized, the intention as to any one part being found by reading all the parts together, and none of its words, clauses, phrases, or sentences shall be rendered surplusage or meaningless. Results that are unreasonable, illogical or inconsistent with common sense should be avoided whenever possible consistent with the statutory language. In other words, an interpretation should be

given to statutory language which will not lead to absurd consequences.

*Id.* at 438–39, 374 A.2d 347. Applying these principles, we hold that, under H.C.Z.R. § 124, consistency with the Howard County Solid Waste Management Plan cannot constitute a "compelling reason" for the establishment of a Solid Waste Overlay District on property zoned M–1. Given the requirement of H.C.Z.R. § 124(F)(2)(i) that all petitions for the establishment of a Solid Waste Overlay District comply with the Howard County Solid Waste Management Plan, such an interpretation would render the "compelling reason" requirement of H.C.Z.R. § 124(A) completely superfluous. Under the plain language of the regulation, the Zoning Board may grant a petition for the establishment of a Solid Waste Overlay District on M–1 property only if it finds: 1) that the petition is consistent with the Howard County Solid Waste Management Plan; and 2) that there are compelling reasons, aside from consistency with the Howard County Solid Waste Management Plan, for granting the petition.

The Zoning Board erred in its interpretation of the "compelling reason" requirement of H.C.Z.R. § 124(A), and failed to articulate any compelling reasons for the granting of BFI's petition other than the fact that it is consistent with the Howard County Solid Waste Management Plan (which itself is invalid; *see* discussion in § II, *supra* ).

**JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND THE MATTER TO THE ZONING BOARD OF HOWARD COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. APPELLEES TO PAY THE COSTS.**