717 A.2d 960

**Frank CITRANO, et ux.**

v.

**John C. NORTH, II, Chairman.**

**No. 1087, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

Sept. 30, 1998.

Bruce C. Bereano, Annapolis, for appellants.

Marianne D. Mason, Asst. Atty. General (J. Joseph Curran, Jr., Asst. Atty. General on the brief), Annapolis, for appellee.

Before MOYLAN and DAVIS, JJ., and ROBERT F. SWEENEY, Judge (retired), Specially Assigned.

MOYLAN, Judge.

The appellants, Frank Citrano, *et ux.*, challenge an order issued by Judge Lawrence H. Rushworth of the Circuit Court for Anne Arundel County, affirming the Anne Arundel County Board of Appeals's denial of the appellants' application for a zoning variance. On appeal, the appellants contend:

1. that there was not substantial evidence before the Board of Appeals for Anne Arundel County to support its decision to deny the appellants' application for variances to permit a deck within the 100 foot critical area, to permit the deck over steep slopes in a critical area, and to permit the deck in the front yard 38 feet closer to the front line lot line;

2. that no variance was required in this case because the deck in question is a "water dependent facility" as defined by the County Code which is permitted in the buffer; and

3. that the deck in question was an "accessory structure for waterfront lot" which is permitted in the front yard of an R–1 district.

In 1992, the appellants, Mr. and Mrs. Citrano, purchased a developed residential waterfront lot of approximately .83 acres ("the property") located on the Magothy River in Pasadena, Maryland. The property lies within the Chesapeake Bay Critical Area [1] and contains a number of steep slopes leading down to the Magothy River.

---

1. In 1984, the General Assembly enacted the Chesapeake Bay Critical Area Protection Program. 1984 Laws of Maryland, chapter 794, codified at Md.Code Ann. (1990 Repl.Vol.), Nat. Res. II § 8–1801. The Law

Prior to the appellants' purchase of the property, Anne Arundel County mapped the property as a Limited Development Area under the Anne Arundel County Critical Area Program which establishes a minimum 100-foot buffer landward from the mean high water line of tidal waters, tributary streams, and tidal wetlands, and provides that the buffer shall be expanded in sensitive areas such as steep slopes.[2] The buffer acts as a "setback" to protect the Bay. Generally, under the County Program, no new development activity, including structures, roads, parking and other impervious surfaces, like free-standing decks, are permitted in the buffer.[3]

In April 1995, the appellants constructed a fifteen-by-twenty foot deck on their property, approximately 12 feet from the shoreline, without the benefit of a building permit. After construction of the deck was completed, the appellants then applied for the necessary variances to permit the deck within the 100 foot critical area[4], on steep slopes in a critical area[5], and in the front yard 38 feet closer to the front line lot line.[6]

---

established a cooperative resource protection program for the Bay and its tributaries by directing the State and local governments to establish and implement the resource protection program on a cooperative basis, "in a consistent and uniform manner subject to State criteria and oversight." § 8–1801(b). The General Assembly defined the "critical area" that would be the cornerstone of the law's resource protection program in § 8–1807, but the details of the program were left to the newly-created Critical Area Commission to develop in "criteria ... necessary or appropriate to achieve the standards" set forth by the General Assembly. § 8–1808(d).

2. The Anne Arundel County Council adopted the County Program and the Critical Area Commission approved the Program in May, 1988.

3. Article 28 § 1A–105(f) of the Anne Arundel County Code.

4. Article 28 § 1A–104(a)(1) of Anne Arundel County Code requires a minimum 100 foot buffer.

5. Article 28 § 1A–105(c) prohibits development on steep slopes.

6. Article 28 § 2–306(a)(1) and (3) establishes the pertinent lot line setback. In order to keep the deck at its present location, the appellants needed all three variances granted.

The County zoning hearing officer denied the variances, and the appellants appealed to the Anne Arundel County Board of Appeals(the "Board"). On May 28, 1996, a hearing was held before the Board at which both the Critical Area Commission and the County recommended denial of the variances for the deck. On July 27, 1996, the Board issued a Decision denying the variances, finding that the appellants had not satisfied the necessary requirements for the granting of a variance under the County Program.

The appellants appealed the Board's decision to the Circuit Court for Anne Arundel County. On May 7, 1997, Judge Lawrence H. Rushworth affirmed the Board's decision, finding that it was supported by substantial evidence and was not premised on an error of law. The appellants then noted this timely appeal.

The standard of review in a zoning appeal was clearly stated by this Court in *Meadowridge Industrial Center v. Howard County*, 109 Md.App. 410, 675 A.2d 138 (1996). "The order of a county zoning authority 'must be upheld if it is not premised upon an error of law and if [its] conclusions reasonably may be based upon the facts proven.'" *Id.* at 419, 675 A.2d 138 (quoting *Leo J. Umerley v. People's Counsel for Baltimore County*, 108 Md.App. 497, 672 A.2d 173 (1996)). Accordingly, a court will reverse a zoning board's action only where there are no grounds for reasonable debate or where the action of the zoning authority has been found to be arbitrary and capricious. *Hardesty v. Board of Zoning Appeals*, 211 Md. 172, 126 A.2d 621 (1956).

A variance, if granted, permits a use that is normally prohibited and presumed to be in conflict with the ordinance. *North v. St. Mary's County*, 99 Md.App. 502, 510, 638 A.2d 1175 (1994). "An applicant for a variance bears the burden of overcoming the presumption that the proposed use is unsuitable. That is done, if at all, by satisfying fully the dictates of the statute authorizing the variance." *North*, 99 Md.App. at 510, 638 A.2d 1175.

In the instant case, the standards for granting a variance in the critical area are set forth in Article 3, § 2–107 of the Anne Arundel County Code. Section 2–107 provides in pertinent part:

(b) For a property located in the critical area, a variance to the requirements of the County critical area program may be granted after determining that:

(1) due to the features of a site or other circumstances other than financial considerations, strict implementation of the County's critical area program would result in an unwarranted hardship;

(2) a literal interpretation of the Code of Maryland Regulations, Title 27, Subtitle 01, Criteria for Local Critical Area Program Development, or the County critical area program and related ordinances will deprive the applicant of rights commonly enjoyed by other properties in similar areas within the critical area of the County;

(3) the granting of a variance will not confer on an applicant any special privilege that would be denied by COMAR, Title 27, Subtitle 01 or the County critical area program to other lands or structures within the County critical area;

(4) the variance request:

(i) is not based on conditions or circumstances that are the result of actions by the applicant; and

(ii) does not arise from any condition relating to land or building use, either permitted or non-conforming, on any neighboring property; and

(5) the granting of the variance:

(i) will not adversely affect water quality or adversely impact fish, wildlife, or plant habitat within the critical area; and

(ii) will be in harmony with the general spirit and intent of the County critical program.

The ordinances require an applicant to meet all of the requirements.

The Board denied the appellants' application for a variance after determining that the appellants failed to satisfy requirements 1 through 4. With respect to the first requirement, the Board, in a very detailed Opinion, stated:

In order to grant a variance, this Board must find that there exists unique physical conditions, exceptional topographical conditions, or exceptional circumstances other than financial considerations.

The lot in question is relatively long and narrow, being 100 feet wide at the water level and 80 feet wide at the road, which having side line dimensions of 410 feet on the west side and 370 feet on the east side. In addition, the lot contains steep slopes, as defined by the County Code. Thus it could be said that unique physical conditions (relative narrowness) and exceptional topographical conditions (steep slopes) both exist.

Section 2–107(b)(1) requires the Board to find that strict implementation of the critical area program would result in unwarranted hardship. Here, the Petitioners claim an unwarranted hardship exists because they are unable to have a free-standing deck in their front yard. Although such an amenity may be a pleasant addition and would allow, as the Petitioner's say an opportunity for them to view sunsets, the Board cannot find this to be an unwarranted hardship.

The Petitioners want to utilize the deck to provide them with a view of the water to the west so that they can watch sunsets. The western view is blocked from other locations on the property because of trees. However, those trees must have been present when Petitioners bought their property, so they would have been well aware of this apparent limitation on the western views. In addition, the dwelling is improved by a second floor deck, giving the Petitioners locations other than their front yard from which to enjoy the views of the water.

In *North v. St. Mary's County,* 99 Md.App. 502, 638 A.2d 1175 (1994), the Court of Special Appeals addressed the issue of unwarranted hardship. There the Court discussed

the concept of unwarranted hardship and reasonable use of the property as follows:

> The applicant, Mr. Enoch, the county, and the trial judge for that matter when discussing the reasonable use of the property seemed to restrict their considerations to just that part of the property where Enoch desires to construct the gazebo. That is incorrect, The property at issue here is the 4 + acre site already developed with a ranch house of approximately 1100 square feet with extensive decking, an improved walkway, and a pier, from which expansive views are present. Thus, the property already is subject to a reasonable use. The instant case focuses on unwarranted hardship; it is a denial of reasonable use that creates an unwarranted hardship. If reasonable use exists, generally an unwarranted hardship would not. In the present case, extensive reasonable use is already being made of the property. Under the appellee's theory, it would be unreasonable and an unwarranted hardship to deny Mr. Enoch anything he wants. *North,* 99 Md.App. at 517–18, 638 A.2d 1175.

In the instant case Petitioner's property is already developed with a single family dwelling and related improvements. Although unwarranted hardships may be alleged, those hardships must be such as would preclude the Petitioners from developing their lot (See Section 2–107(a)(2)). Their lot is developed, and like the property in St. Mary's County, a reasonable use of property exists.

■ The trial court affirmed the Board's denial of the appellants' application for the variance, stating:

> One of the determinations that must be made before granting a variance is that due to the features of the site, strict implementation of the County's critical area program would result in an unwarranted hardship to the applicant. § 2–107(b)(1). An unwarranted hardship exists if reasonable use of the entire property would be denied. *See North,* at 517, 638 A.2d 1175.

The Board found that although the deck may be a pleasant amenity, denial of the application did not create an unwarranted hardship. Board Opinion at 4. The evidence before the Board included numerous photographs of the property from various vantage points. In addition, the Board members conducted a site inspection. This evidence provided substantial evidence to support the Board's finding that the variance denial would not create an unwarranted hardship. The evidence before the Board on this question was at least fairly debatable. Because all of the requirements of 2–107 must be made in order to grant a variance this finding alone mandated denial of the variance.

We see no error in the trial court's decision. Moreover, as correctly stated by the trial court, because all five requirements of § 2–107 must be met, we need not address the other four requirements due to the appellants' failure to establish that denial of the variance would create an "unwarranted hardship." Additionally, we need not address the appellant's variance requests to permit the deck to be built on steep slopes and without the required setback from their lot line as all three variances needed to be granted in order to permit the building of the deck.

■ The appellants' next contention is that no variances were required in this case because the deck in question is a "water dependent facility" as defined by Article 28 § 1–101(72A) and is thus permitted in the buffer area. Section 1–101(72A) defines "water dependent facilities" as:

those structures or uses associated with industrial, maritime, recreational, education, or fisheries activities that require location at or near the shoreline such as, launching ramps, hoists, lifts, marine railways, piers, pilings, marine fuel sales, wet storage of seaworthy water craft, nature trails, crab shedding facilities, intake or discharge structures, and stormwater outfall structures.

Specifically, the appellants argue that although waterfront decks are not included in the above list, the list is not exhaustive. Thus, according to the appellants, because the

deck was to be used for recreational purposes it needed to be located close to the shoreline and falls within the definition of a "water dependent facility." We are not persuaded. Accordingly, we agree with the trial court's determination that "it is clear that a deck is not a water dependent facility under the term's definition."

■ The appellants' third contention is equally without merit. The appellants contend that the deck is an "accessory structure for waterfront lot" which is permitted in the front yard of an R–1 district. Such "accessory structures" are still subject to the 100–foot buffer requirement. As stated by the trial court:

Petitioner's argument that the deck is an "accessory structure for waterfront lot," which is permitted in the front yard of an R–1 district by Art. 28, § 2–104 does not relieve them of the variance required within the 100 foot critical area buffer. Article 28, § 1A–105(h)(1) provides that "all development in any habitat protection area, including the 100–foot buffer ... shall be permitted pursuant to variance...."

Again, we see no error in this determination. Accordingly, we affirm the judgment of the circuit court.

*JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.*