WATTS, J.,
concurring.
Respectfully, I concur.[1] I would hold, however, that the Board of Appeals (“the Board”) did not err in granting Wagner after-the-fact variances and in determining that the variances granted were the minimum variances necessary. I would hold that the grant of a variance for a 320-square-foot driveway/boat ramp was unnecessary, as the driveway/boat ramp is a water-dependent facility for which a variance is not required under the Critical Area Law. Despite this view, I believe it reasonable to allow the Board an opportunity to explain its opinion and explicitly address whether the County’s Critical Area Program requires a variance for a water-dependent facility, and thus, I concur with the Majority’s decision to remand the case to the Board.
*639 I believe that the driveway/boat ramp is a water-dependent facility that can exist in the Critical Area independent from a variance; that this is what Board of Appeals determined in its opinion; and, further, that this is the legally correct conclusion; i.e., a water-dependent facility can exist in the Critical Area independent from a variance. My reasons are as follows. In a letter dated October 31, 2006, Joseph Rutter, a Planning and Zoning Officer with the Anne Arundel County Office of Planning and Zoning, advised Danny G. Boyd, Wagner’s site plan designer, that the request to consider the 40-foot by 8-foot driveway/boat ramp to be a water-dependent facility pursuant to Code of Maryland Regulations (“COMAR”) 27.01.03.01A and B was acceptable. Rutter stated:
Although vehicular access to an island home site is not specifically identified in the definition, vehicular access to an island cannot exist outside the buffer. Therefore, the driveway as reflected on the site plan ... is determined to be water[-]dependent and acceptable provided the remainder of the driveway as shown on the site plan is removed and revegetated as the site plan reflects.
(Emphasis added).
On November 13, 2006, Rutter and Suzanne Schappert, the Planning Administrator of the Anne Arundel County Office of Planning and Zoning, submitted a “Findings and Recommendation” to the Board concerning Wagner’s request for variances. In the Findings and Recommendation, Schappert and Rutter included Rutter’s determination that the 320-square-foot driveway/boat ramp is a water-dependent facility, and stated:
[T]his Office reviewed a request to allow a 40' long x 8' wide driveway on the northern side of the island as a water dependent use for access to the island. By letter dated October 31, 2006, the Planning and Zoning Officer, Joseph Rutter, indicated that vehicular access to an island cannot exist outside the Buffer and that the 40' long driveway reflected on the site plan submitted with the letter of consideration dated October 26, 2006 is determined to be water[-]dependent and acceptable provided the remainder *640 of the driveway as shown on the site plan is removed and revegetated.
(Emphasis added).
In its Memorandum of Opinion, the Board ratified the view that the driveway/boat ramp is a water-dependent facility by granting variances that included 3,005 square feet of impervious surface “plus” the driveway/boat ramp. Specifically, the Board stated that it granted the requested variances because the Board determined that the variances
are the minimum necessary to afford relief here because the resulting impervious surface on site will measure no more than 3,325 square feet, that is the 3,005 square feet of historically existing square footage (which could be used by right) plus a reasonably sized (8 x 40 foot) boat ramp/driveway from the water’s edge at the pier.
(Emphasis added). The Board determined that the driveway/boat ramp was necessary to “a[c]commodate the movement of boats or other similar vehicles from the water to avoid damage to the shore[.]” (Footnote omitted). Nonetheless, after having determined the driveway/boat ramp to be a water-dependent facility in its opinion, the Board included the driveway/boat ramp as part of the variances in its order.
The Board’s inclusion of a variance for the driveway/boat ramp in its order was, from my perspective, unnecessary. A review of the case law, statutes, and regulations demonstrates that a water-dependent facility can exist in the Critical Area independent of a variance. COMAR 27.01.03.01, concerning criteria for local Critical Area program development and water-dependent facilities, provides the following definition for “water-dependent facilities”:
A. “Water-dependent facilities” means those structures or works associated with industrial, maritime, recreational, educational, or fisheries activities that require location at or near the shoreline within the Buffer specified in COMAR 27.01.09.
B. An activity is water-dependent if it cannot exist outside the Buffer and is dependent on the water by reason of the *641 intrinsic nature of its operation. These activities include, but are not limited to, ports, the intake and outfall structures of power plants, water-use industries, marinas and other boat docking structures, public beaches and other public water-oriented recreation areas, and fisheries activities.
C. Excluded from this regulation are individual private piers installed or maintained by riparian landowners, and which are not part of the subdivision which provides community piers (see Regulation .07 of this chapter).
In turn, COMAR 27.01.03.03 provides:
In developing their Critical Area programs, local jurisdictions shall follow these criteria when addressing water-dependent facilities:
A. Except as otherwise provided in this chapter, new or expanded development activities may be permitted in the Buffer in intensely developed and limited development areas provided that it can be shown:
(1) That they are water-dependent;
(2) That the project meets a recognized private right or public need;
(3) That adverse effects on water quality and fish, plant, and wildlife habitat are minimized;
(4) That, insofar as possible, nonwater-dependent structures or operations associated with water-dependent projects or activities are located outside the Buffer; and
(5) That the facilities are consistent with an approved local plan as set forth below.
B. Except as otherwise provided in this regulation, new or expanded development activities may not be permitted in those portions of the Buffer which occur in resource conservation areas.
Anne Arundel County Code § 17-8-301(b) states: “Development on properties containing buffers shall meet the requirements of COMAR, Title 27.”
*642 In Citrano v. North, 123 Md.App. 234, 236, 717 A.2d 960, 961 (1998), the Court of Special Appeals considered an argument from Mr. and Mrs. Frank Citrano, appellants, that a variance was not required for a deck because the deck was a water-dependent facility. Appellants purchased residential waterfront property in Anne Arundel County within the Chesapeake Bay Critical Area and, without obtaining a building permit, constructed a fifteen-by-twenty foot deck on the property, approximately twelve feet from the shoreline. Id. at 236-37, 717 A.2d at 961. After the fact, appellants “applied for the necessary variances to permit the deck within the 100 foot critical area, on steep slopes in a critical area, and in the front yard 38 feet closer to the front line lot line.” Id. at 237, 717 A.2d at 961 (footnotes omitted). The Board denied the requested variances. Id. at 238, 717 A.2d at 961. In the intermediate appellate court, appellants contended that no variances were required because the deck was a water-dependent facility permitted in the buffer. Id. at 242, 717 A.2d at 964. Specifically, appellants argued that the deck was a water-dependent facility pursuant to the Anne Arundel County Code because it was to be used for recreational purposes and needed to be close to the shoreline.[2] Citrano, 123 Md. App. at 242-43, 717 A.2d at 964. The Court of Special Appeals disagreed that the deck was a water-dependent facility, and instead agreed with the trial court that “ ‘it is clear that a deck is not a water[-]dependent facility under the term’s definition.’ ” Id. at 243, 717 A.2d at 964. Significantly, the Court of Special Appeals did not indicate that a variance was required for a water-dependent facility. No Maryland case contradicts Citrano’s logic.
*643 An examination of the regulations, statute, and Citrano leads to the conclusion that new development is permitted in the buffer in the critical area, absent the need to obtain a variance, if the structure is a water-dependent facility, as that term is defined in COMAR 27.01.03.01, and so long as the general criteria in COMAR 27.01.03.03 are satisfied. In other words, a variance is not required for a water-dependent facility. This construction of the Critical Area Law comports with that advanced by Anne Arundel County.[3] In its brief, Anne Arundel County discusses a pier and bulkhead constructed by Wagner and states: “Neither the pier nor the bulkhead is subject to the variance process since both are ‘water-dependent structures’ as defined under State and County critical area law.” (Citing Anne Arundel County Code § 14-8-301; COMAR 27.01.03.1A). The conclusion that a variance is not required for a water-dependent facility is bolstered by the circumstance that, similar to COMAR 27.01.03.03, Md.Code Ann., Nat. Res. (1973, 2012 Repl.Vol.) (“NR”) § 8-1808.5, concerning community piers and noncommercial boat docking or storage facilities, states that a water-dependent facility must satisfy certain criteria, see NR § 8-1808.5(c), and that “[a] local jurisdiction may grant a variance from the provisions of th[e] section in accordance with regulations adopted by the Commission concerning variances as part of local program development set forth in COMAR 27.01.11 and notification of project applications set forth in COMAR 27.03.01.” NR § 8-1808.5(e). Stated otherwise, NR § 8- *644 1808.5 generally permits, absent a variance, community piers or other noncommercial boat docking or storage facilities subject to certain criteria, but if certain criteria cannot be met, an individual is permitted to request and potentially receive a variance from the provisions contained in NR § 8-1808.5.
Here, despite Citrano, 123 Md.App. 234, 717 A.2d 960, NR § 8-1808.5, regulations, and content of Anne Arundel County’s brief, the Majority remands because the Board either did not adequately determine that the 320-square-foot driveway/boat ramp, previously found to be a water-dependent facility, qualified for a variance, or, as stated in my opinion, granted a variance that was unnecessary. Specifically, the Majority states that the Board “inexplicably! ] also granted Wagner an additional 320 square feet for a boat ramp, with no discussion as to why this ramp was necessary to Wagner’s reasonable and significant use, or why this area of impervious surface should not be included in the total allowed to Wagner.” Majority Op. at 631, 97 A.3d at 160 (footnote omitted). The Majority remands the matter to the Board for clarification of its opinion and a determination as to the significance of a finding that the driveway/boat ramp is a water-dependent facility. Majority Op. at 633-34, 97 A.3d at 161-62.
As explained above, however, it is clear that a water-dependent facility can exist independent of any variance; i.e., a variance is not required for a water-dependent facility in the Critical Area. I would conclude that the driveway/boat ramp is a water-dependent facility, as found by the Anne Arundel County Office of Planning and Zoning and confirmed by the Board. A driveway/boat ramp is a structure associated with recreational water-dependent activities, such as vehicular access to an island home and boat docking, which require location at or near the shoreline within the buffer and that cannot exist outside the buffer. See COMAR 27.01.03.01A and B. The driveway/boat ramp fulfills the criteria set forth in COMAR 27.01.03.03A(l)-(5), in that: (1) the development activities are water-dependent; (2) the project (i.e., the driveway/boat ramp) meets Wagner’s recognized private right to have vehicular access to his island home; (3) the adverse *645 effects on water quality and fish, plant, and wildlife habitat are minimized, as recognized by the Majority, which holds that the Board’s findings that the requested variances would not have a negative impact on the environment are supported by substantial evidence, see Majority Op. at 635-37, 97 A.3d at 163-64; (4) the record does not contradict that, insofar as possible, nonwater-dependent structures and operations associated with water-dependent projects or activities are located outside the buffer; and (5) the driveway/boat ramp is consistent with the approved local plan articulated by the Anne Arundel County Office of Planning and Zoning and the Board, i.e., that the driveway/boat ramp is an acceptable water-dependent facility provided that the remainder of the driveway/boat ramp shown on the site plan is removed and re-vegetated as the site plan reflects.
In sum, in my view, the record demonstrates that the Board granted variances totaling no more than 3,005 square feet of impervious space “plus” the previously determined 320-square-foot water-dependent driveway/boat ramp. As the Majority recognizes, the grant of variances totaling 3,005 square feet of impervious surface was reasonable, given “historically existing impervious surface area[.]” See Majority Op. at 631, 97 A.3d at 160. In other words, the 3,005 square feet was the minimum variance necessary, and the Board did not err in so finding. Because I believe it appropriate to allow the Board an opportunity to speak for itself and clarify any potential doubt as to whether it determined the driveway/boat ramp to be a water-dependent facility, and as such, exempt from the need for a variance, I concur with the Majority’s decision to remand.

. I agree with the Majority’s conclusions that: (1) CBF lacked standing to participate in the variance proceedings before the Board of Appeals on the ground that MRA, which advocated the same position, had standing; (2) Anne Arundel County Code § 3-l-107(a) does not violate the Express Powers Act; and (3) the Board of Appeals did not violate its own rules when it held that CBF could not cross-examine witnesses.

. At the time, the Anne Arundel County Code defined "water dependent facilities” as “those structures or uses associated with industrial, maritime, recreational, education, or fisheries activities that require location at or near the shoreline such as, launching ramps, hoists, lifts, marine railways, piers, pilings, marine fuel sales, wet storage of seaworthy water craft, nature trails, crab shedding facilities, intake or discharge structures, and stormwater outfall structures.” Citrano, 123 Md.App. at 242, 717 A.2d at 964 (citing Anne Arundel County Code, Article 28 § 1-101(72A)).

. At the hearing before the Board, the Chairman asked Schappert (the Planning Administrator for the Anne Arundel County Office of Planning and Zoning): “If indeed the Board were to disagree with Mr. Ru[tt]er with regards to whether or not a driveway is a water-dependent facility, would that need a variance?” In response, Schappert testified: "It’s disturbance in the buffer. Yes, and it’s part of the associated facilities that, you know, were referred to in the heading of the variance request.” In other words, Schappert testified that, if the Board disagreed that the driveway/boat ramp was a water-dependent facility, then a variance would be required. It follows that, if the Board agreed the driveway/boat ramp was a water-dependent facility, a variance would not be required. And, the Chairman posed the question in a manner that raises an inference that the Board supports this position too.